1  ANDY DOGALI (admitted *pro hac vice*)
2  adogali@dogalilaw.com
   Dogali Law Group, P.A.
3  401 E. Jackson St., Suite 1825
4  Tampa, Florida 33602
   (813) 289-0700
5
6  EUGENE FELDMAN (CA Bar No. 118497)
7  eugene@aswtlawyers.com
   Arias, Sanguinetti, Wang & Torrijos, LLP
8  6701 Center Drive West, Suite 1400
   Los Angeles, CA  90045
9  (310) 844-9696
10
11 JENNIFER A. LENZE (CA Bar No. 246858)
   jlenze@lenzelawyers.com
12 Lenze Lawyers, PLC
13 1300 Highland Ave. Suite 207
   Manhattan Beach, CA 90266
14 (310) 322-8800
15 *Attorneys for Plaintiffs*

16            **UNITED STATES DISTRICT COURT FOR THE**
17              **CENTRAL DISTRICT OF CALIFORNIA**
18
   T.P., et al.,                          )   Case No.: 15-cv-5346-R
19                                         )
20            Plaintiffs,                  )   **PHASE III PLAINTIFFS'**
                                           )   **LOCAL RULE 16.4**
21       v.                                )   **MEMORANDUM OF**
                                           )   **CONTENTIONS OF FACT AND**
22                                         )   **LAW**
   WALT    DISNEY    PARKS    AND          )
23 RESORTS U.S. INC.,                      )
                                           )   **Hon. Manuel L. Real**
24                                         )
            Defendant.                     )
25 _____/       **Jury Trial: July 9, 2019**
26
27
28

---

Page 1

DOGALI LAW GROUP, P.A.

DOGALI LAW GROUP, P.A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**I.  INTRODUCTION** ................................................................**4**

**II. THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1)**........................**7**

    **A. PLAINTIFFS' CLAIMS AND ELEMENTS**.................................**7**

        **1.  Summary of Plaintiffs' Claims (L.R. 16-4.1(a), (b))** .............**7**

        *a.  Claim 1: Intentional Infliction of Emotional Distress* ...............**9**

        *b.  Claim 2: Negligent Infliction of Emotional Distress*.................**11**

        *c. Claim 3: Violation of the California Unruh Civil Rights Act* .......**15**

        **2.  Prayer for Relief – Damages** ...............................................**16**

    **B. SUMMARY OF DEFENDANT'S AFFIRMATIVE DEFENSES**
      **AND KEY EVIDENCE IN OPPOSITION TO DEFENDANT'S**
      **AFFIRMATIVE DEFENSES (L.R. 16-4.1(d), (f))**........................**16**

    **C. SUMMARY OF EVIDENTIARY ISSUES (L.R. 16-4.1(h)** .............**18**

    **D. IDENTIFICATION OF ISSUES OF LAW  (L.R. 16-4.1(i))** ...........**18**

**III. JURY TRIAL (L.R. 16-4.4)** .................................................**18**

    **A. ISSUES TRIABLE TO THE JURY** ..........................................**18**

    **B. ISSUES TRIABLE TO THE COURT** .......................................**19**

**IV. ATTORNEY'S FEES (L.R. 16-4.5)**...........................................**19**

**CERTIFICATE OF SERVICE** ......................................................**19**

Plaintiffs' Memorandum of Contentions of Fact and Law
*T.P., et al. v. Walt Disney Parks & Resorts US, Inc.*                    *Case No. 15-CV-5346*

1

### TABLE OF AUTHORITIES

2

<u>CASES</u>

3  *Banga v. Kanios*, 2016 WL 7230870, *4 (N.D. Cal. 2016)……………………..16

4  *Burgess v. Superior Court,* 2 Cal. 4th 1064, 1072 (1992)………………….........13

5  *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742

6     F.3d 414, 425 (9th Cir. 2014)................................................................15

7  *Gutierrez v. Gonzalez*, 2017 WL 1520419, *6 (C.D. Cal. Apr. 26, 2017).............16

8  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).........................................10

9  *Johnson v. Dhami*, 2014 WL 4368665 (E.D. Cal. 2014) ...................................15

10  *Koebke v. Bernardo Heights Country Club*, 115 P.3d 1212, 1228 (Cal. 2005))....16

11  *Levine v. Sleep Train*, 2016 WL 2961100, *5 (E.D. Cal. 2016), <u>rep. and rec.</u>

12  <u>adopted</u>, 2016 WL 3418350 (E.D. Cal. 2016)…………………………………16

13  *Munson v. Del Taco, Inc.,* 208 P.3d 623 (Cal. 2009) ....………………… 15, 16

14  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863

15     P.2d 795..............................................................................................10, 13

16  *Quiroz v. Seventh Ave. Ctr.,* 140 Cal. App. 4th 1256, 1285, 45 Cal. Rptr. 3d 222

17     (2006) .................................................................................................10, 13

18  *Wong v. Tai Jing,* 189 Cal. App. 4th 1354, 1376 (2010)........................................10

19

20  <u>STATUTES, OTHER</u>

21  42 U.S.C. §12131................................................................................5

22  Cal. Civ. Code §51 and §54....................................................................5

23  Ca. Civ. Code § 55..............................................................................29

24  Ca. Civ. Code §3294(a)........................................................................29

25  California Civil Jury Instructions (CACI), No. 3020.............................................16

26

27

28

DOGALI LAW GROUP, P.A.

Plaintiffs' Memorandum of Contentions of Fact and Law
*T.P., et al. v. Walt Disney Parks & Resorts US, Inc.*                    *Case No. 15-CV-5346*

Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiffs C.M.H. and H.A.H., respectfully submit the following Memorandum of Contentions of Fact and Law, outlining the issues to be presented in the trial presently scheduled to commence July 9, 2019.

## I. INTRODUCTION

This is a civil action for damages brought against Walt Disney Parks and Resorts U.S., Inc. ("Disney") on behalf of multiple families with children who suffer from cognitive disabilities, primarily Autism Spectrum Disorder ("autism"). This is an action seeking damages pursuant to common law claims based, in part, upon Disney's violations of the Americans with Disabilities Act, 42 U.S.C. §12131 ("ADA"), and Unruh Civil Rights Act, Cal. Civ. Code §51 and §54 ("Unruh Act"). For decades, with few exceptions, Disney's accommodation of disabled persons, particularly persons with developmental disorders such as autism, was the finest in the country.  Disney's policy went by several names over the years, most recently the Disney "Guest Assistance Card" (GAC) in the 1990s and 2000s. During these years, until late 2013, Disney generally accommodated persons with disabilities by allowing them access to Disney's attractions via "Fastpass" lines or other alternate entrances including "back door" and "side door" entry areas.[1] Fastpass lines are reserved for guests who make appointments to visit the attractions. The ability to make Fastpass line appointments typically expires early on any given day of a Disney park visit, because the number of appointments is limited and guests consume the available appointment times at the beginning of the day.  The Fastpass lines do not permit *immediate* access to the attractions, because even guests who make appointments usually must wait a few minutes to enter an attraction at the appointment time.

---

[1] Alternate entry access to specific attractions has always been more common at Disneyland than at Walt Disney World, as many of the California attractions were built long before the advent of Fastpass, which was more common at Walt Disney World.

Page 4

DOGALI LAW GROUP, P.A.

1
2
3
4
5
6
7
8
9
10
11

DOGALI LAW GROUP, P.A.

12
13
14
15
16
17
18
19

20
21
22
23
24

25
26
27

28

     In early 2012, as a result of "an ECV [electric wheelchairs] Strategy project which has recently been approved by senior leadership," Disney empanelled a committee to study Disney's "access policies and tools for Guests with Disabilities." After certain news reports surfaced in May of 2013, the publicly-stated reason for studying alternatives to the GAC, and ultimately releasing the new system, was not the proliferation of motorized wheelchairs in Disneyland but was "abuse" of the GAC by non-disabled persons. In truth, other reasons played into the decision, including Disney's inability to integrate a disability system into its increasingly electronic crowd management systems, and Disney's inability to accurately track the quantity of attraction and ride usage flowing from all such uses.

     From its initial formation, the committee's focus was on developing a "dance card" system. The idea was that disabled guests would be issued a card to carry through the park, with which they would obtain appointment times to return to the ride. The concept is consistent with Disney's over-arching theme for all its parks, which is to transition the parks into environments where all experiences occur "by appointment only," effectively allowing Disney to maximize its management of crowds through manipulation of the traffic patterns of Disney's guests.

     Disney touted its system as a fair one because it called for a "virtual wait." Under the Disability Access Service ("DAS"), as the "dance card" system came to be known, guests would be given a time to visit the ride that was approximately equal to the time which would be required if the guest was, at that moment, standing in line.

     For many years, Disney had a department devoted to services and accessibility for Disney's guests with disabilities. Even so, the DAS committee was chaired by personnel in Disney's industrial engineering department, and not

Page 5

DOGALI LAW GROUP, P.A.

by persons in Disney's disabilities group. The evidence in this case will show that Disney's disabilities group developed a thorough understanding of the needs of its guests with cognitive disabilities, particularly autism. Disney knew that guests with autism could not wait for extended periods of time, as many such guests would be unable to be diverted or occupied in order to wait for a scheduled return time for a ride or attraction. For more than a year after the DAS committee was formed, Disney's disabilities personnel expressly voiced their concern that the "dance card" system, while it might work for most disabled persons, would not accommodate, and would uniquely prejudice, one group of disabled persons: persons with cognitive impairments, including autism. The disabilities personnel pointed out to Disney's statistics-driven engineers that autistic persons, at least excepting those on the highest-functioning end of the autism spectrum, cannot comprehend the concept of time.  Their issue is not that they cannot tolerate *waiting in lines* – it is that they cannot tolerate *waiting*, beyond a few minutes, the number of tolerable minutes varying from guest to guest, depending upon the nature and severity of the disability.  Plaintiffs, including C.M.H., cannot appreciate that in exchange for doing nothing in the present they are being given an appointment to experience something in the future.

Although Disney's disabilities specialists voiced precisely this concern to the DAS committee, Disney's industrial engineers refused to heed these warnings. Instead, they consistently suggested that Disney could accommodate all disabled persons in one consistent way: by eliminating the need to wait *in line* as a precondition of experiencing Disney's attractions; by equalizing wait times for all rather than accommodating wait time challenges for some. Ultimately, the DAS committee deliberately ignored the pleas of Disney's disabilities personnel and released the DAS in its present form.

DOGALI LAW GROUP, P.A.

1   Disney expressly proposes that its current DAS is a one-size-fits-all
2   disabilities accommodation policy; that the DAS can accommodate each and every
3   guest and each and every disability, without modification. However, this premise
4   is belied by Disney's own internal documents and communications leading up to
5   the creation of the DAS. Furthermore, the complaints of thousands of families
6   with autistic children prove that the warnings offered by Disney's disability
7   personnel were well-taken. Despite these facts, Disney refuses to conduct
8   individual assessments of their disabled guests, and refuses to offer those with
9   cognitive disabilities any accommodation other than the DAS.

10   Disney suggests that it confers with the families of disabled guests at the
11   time the DAS is provided. These interactions are not genuine "individualized
12   assessments" but are sham substitutes for same.

13   **II.  THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1)**

14   **A. PLAINTIFFS' CLAIMS AND ELEMENTS**

15   **1.  Summary of Plaintiffs' Claims (L.R. 16-4.1(a), (b))**

16   This case initially encompassed the claims of 27 Plaintiff families who
17   visited the Disneyland resort in California, and Walt Disney World in Orlando,
18   Florida. The case was transferred to the Middle District of Florida, where the
19   Court dismissed 13 families' non-statutory claims, *sua sponte*, and retained
20   jurisdiction over their ADA and Unruh Act claims. The 13 families' dismissed
21   common law tort and contract claims were re-filed in the instant Complaint, along
22   with the claims of 14 new families. During September of 2016, the Middle District
23   of Florida entered summary judgment against all of the dozens of families who
24   had actions pending there, finding no question of material fact in any case about
25   any Plaintiff's need for accommodation. Thereafter, by Orders dated October 4,
26   2016 [D126] and April 13, 2017 [D145], this Court ruled that the families which
27   brought actions in Florida and suffered adverse summary judgments there under
28

1    ADA and the Unruh Act are collaterally estopped from litigating any of their
2    pleaded claims or issues in this Court.

3        On August 30, 2018, the Eleventh Circuit Court of Appeals reversed all 30
4    appeals taken from the Florida judgments. See *A.L. v. Disney*, 900 F.3d 1270 (11th
5    Cir. 1918).  Because the reversed Florida judgments formed the basis for this
6    Court's dispositive orders, the Plaintiffs who suffered those orders have filed
7    motions for relief.

8        This Court previously established a case management procedure which calls
9    for the parties to select two bellwether cases to be tried. Promptly following each
10   sequential trial of two cases, a mediation is to commence, through which the
11   parties can apply in negotiations the experience gained from the immediately
12   preceding trial. With this procedure, the Court scheduled two prior trials – the
13   Phase I trial for Plaintiffs T.P. & S.P. and A.M.W., D.L.W. & R.D.W., and the
14   Phase II trial for Plaintiffs P.F.E. & B.P.E. and E.A.P. & A.E.P. On the eve of
15   each trial, the Court entered the dispositive rulings described above.

16       The Phase III trial is now scheduled to commence July 8, 2019, for two
17   families:  Plaintiffs C.M.H. & H.A.H. and J.F.S. & J.A.S.  When the Phase III trial
18   was initially scheduled, the undersigned counsel represented both families.  By
19   Order dated January 31, 2019, this Court granted counsel's withdrawal for J.F.S.
20   & J.A.S.[2]

---

[2] While J.F.S. and J.A.S. have taken no discernible action in the case since the withdrawal,
they appear to remain designated as Phase III bellwether Plaintiffs. No attorney has
appeared in the action as counsel for J.F.S., contrary to the dictates of *Johns v. Cty. of San
Diego*, 114 F.3d 874 (9th Cir. 1997) (parent or guardian cannot bring action on behalf of
minor child without retaining counsel), and no guardian ad litem has been appointed for J.F.S.,
contrary to the guidance of *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014) ("the court
generally should appoint a guardian ad litem under Rule 17(c)" for any litigant determined to
be incompetent).

DOGALI LAW GROUP, P.A.

Plaintiffs' Memorandum of Contentions of Fact and Law
*T.P., et al. v. Walt Disney Parks & Resorts US, Inc.*                          *Case No. 15-CV-5346*

The claims of C.M.H. are brought by and through his natural parent and guardian H.A.H.  H.A.H. also asserts individual claims on her own behalf. The Plaintiff families in these bellwether cases bring claims against Disney for intentional and negligent infliction of emotional distress, violation of the California Unruh Civil Rights Act, and breach of contract. The following separate claims by the Plaintiff families against Disney are set forth in the Complaint.

- ***C.M.H./H.A.H. Claims (Doc. 1-1; 1-6; 1-7: Counts 114-119)***

| Count | Cause of Action | Plaintiff |
|-------|-----------------|-----------|
| 114 | Negligent Infliction of Emotional Distress | C.M.H., through H.A.H. |
| 115 | Intentional Infliction of Emotional Distress | C.M.H., through H.A.H. |
| 116 | Unruh Civil Rights Act | C.M.H., through H.A.H. |
| 117 | Negligent Infliction of Emotional Distress | H.A.H. |
| 118 | Intentional Infliction of Emotional Distress | H.A.H. |
| 119 | Breach of Contract | H.A.H. |

### a. *Claim 1: Intentional Infliction of Emotional Distress*

Summary:   The Plaintiffs' claims arise from Disney's deliberate and knowing refusal to accommodate C.M.H.'s cognitive disabilities as a guest of Disney's theme parks. For many years, Disney accommodated guests with cognitive disabilities such as autism by providing the Guest Assistance Card ("GAC"), which permitted disabled guests to access Disney's attractions without being required to wait for extended periods of time in a traditional queue. Plaintiff's cognitive disabilities leave him unable to wait for extended periods of time without suffering mental and emotional distress, manifesting itself in emotional and physical behaviors that culminate in what is commonly known as a meltdown. During a meltdown related to Plaintiff's cognitive disability, he suffers from extreme mental and emotional distress, which constitutes a physical injury

DOGALI LAW GROUP, P.A.

under California Law. Because of the severity of the mental and emotional distress that C.M.H. often suffers during a meltdown, a reasonable and foreseeable consequence of H.A.H. observing and trying to ameliorate his extreme distress is that H.A.H. also suffers severe emotional distress.

Elements:  The elements for establishing a claim of intentional infliction of emotional distress are as follows:

1.    Disney engaged in outrageous conduct;

2.    Disney intended to cause, or acted with reckless disregard of the probability of causing emotional distress;

3.    Plaintiff suffered severe emotional distress; and,

4.    Disney's outrageous conduct was the actual and proximate cause of Plaintiff's emotional distress.

*Wong v. Tai Jing,* 189 Cal. App. 4th 1354, 1376 (2010); *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1001 (1993).

While not an element necessary to establish negligent, intentional or reckless conduct, Plaintiffs will show that in failing to conduct an individual assessment of C.M.H.'s needs and properly accommodate his disability, Disney violated the ADA and the Unruh Act. These violations of the law constitute evidence of Disney's intentional conduct, its recklessness, and its negligence. *See Quiroz v. Seventh Ave. Ctr.,* 140 Cal. App. 4th 1256, 1285, 45 Cal. Rptr. 3d 222 (2006). Plaintiffs will seek an instruction to the jury that Disney's violation of the ADA and Unruh Act in the context of the Plaintiff's claims constitutes negligence *per se*.

Key Evidence in Support of Claim:  Plaintiffs incorporate their introductory statement, above. Plaintiffs will introduce evidence in the form of testimony from Disney executives and employees establishing that Disney knew that the DAS

DOGALI LAW GROUP, P.A.

would not accommodate guests such as C.M.H. and that such guests would suffer a disparate impact when Disney unleashed the DAS. The testimony and documentary evidence will show that Disney developed a sophisticated knowledge of the needs of guests with cognitive disabilities such as autism, and knew that certain of these guests were unable to wait for extended periods of time without suffering from emotional distress as a result of their disabilities. Plaintiffs will introduce documentary evidence in the form of internal communications, memoranda, and studies proving that Disney knew that unleashing the DAS would result in emotional harm to guests with cognitive disabilities such as autism, which prevents such guests from waiting for an extended period of time.

The documentary evidence will show that Disney executives and employees who were historically tasked with providing accommodations to guests with disabilities and complying with the ADA warned Disney that unleashing the DAS would result in harm to such disabled guests, as the DAS could not accommodate their inability to wait for extended periods of time.

Plaintiffs' evidence will show that C.M.H.'s disabilities are of precisely the type that Disney's disability professionals tried unsuccessfully to warn Disney about, and that C.M.H. was subjected to repeated callous discrimination of precisely the type Disney's disability professionals predicted, during visits Disney's parks in 2014, 2015, 2016 and 2017.

### b. *Claim 2: Negligent Infliction of Emotional Distress*

Summary:  At the time Plaintiffs visited Disney's theme park, Disney had a duty to provide its guests with disabilities an individual assessment to determine its disabled guests' needs and to provide an appropriate and reasonable accommodation to that guest. When Disney when it unleashed the DAS, it knew or should have known the DAS would not accommodate the special needs of guests like C.M.H. Among other things, Disney's own employees warned that the

DOGALI LAW GROUP, P.A.

DAS would not accommodate, and would disparately impact, guests with certain cognitive disabilities. Disney failed to exercise reasonable care by conducting genuine individual assessments of disabled guests' needs, and failed to exercise reasonable care in providing the guests with a reasonable accommodation for their disability. As a direct and proximate result of Disney's negligence, the C.M.H. suffered from severe emotional distress because he was forced to wait for extended periods of time to access the attractions at Disney's theme parks. The harm to Plaintiffs was reasonably foreseeable because Disney anticipated the DAS would not accommodate its guests with cognitive disabilities. As a direct and proximate result of Disney's negligence, C.M.H. suffered severe emotional distress. H.A.H. suffered severe emotional distress by directly witnessing her disabled child's emotional distress which was caused by Disney's negligence in failing to accommodate his disability.

Elements:   The elements of a claim for Negligent Infliction of Emotional Distress are founded in negligence, and are as follows:

1. That Disney owed a duty to Plaintiffs to provide an individual assessment of C.M.H.'s disabilities, and to provide an accommodation for such disability so as to allow Plaintiffs access to Disney's parks;

2. That Disney had a duty to comply with applicable law in individually assessing C.M.H.'s disabilities and in providing an appropriate accommodation for such disability to allow Plaintiffs access to Disney's parks;

3. That Disney had a duty to exercise reasonable care in fulfilling its duties to Plaintiffs;

4. That Disney knew or should have known that failing to comply with the law in providing C.M.H. with an individual assessment of and

DOGALI LAW GROUP, P.A.

1  appropriate accommodation for his disability was likely to result in harm
2  to Plaintiffs;

3  5.  That Disney breached its duty to Plaintiffs by failing to provide an
4      individual assessment of and appropriate accommodation for C.M.H.'s
5      disability; and,

6  6.  As a direct and proximate result of Disney's breach, Plaintiffs have
7      suffered damages.

8  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863
9  P.2d 795; *Burgess v. Superior Court,* 2 Cal. 4th 1064, 1072 (1992).

10      While not an element necessary to establish negligent, intentional or
11  reckless conduct, Plaintiffs will show that in failing to conduct an individual
12  assessment of Plaintiffs' needs and properly accommodate Plaintiffs' disability,
13  Disney violated the ADA and the Unruh Act. These violations of the law
14  constitute evidence of Disney's intentional conduct, its recklessness, and its
15  negligence. *See Quiroz v. Seventh Ave. Ctr.,* 140 Cal. App. 4th 1256, 1285, 45 Cal.
16  Rptr. 3d 222 (2006). Plaintiffs will seek an instruction to the jury that Disney's
17  violation of the ADA and Unruh Act in the context of the Plaintiffs' claims
18  constitutes negligence *per se.*

19      <u>Key Evidence in Support of Claim</u>:  Plaintiffs incorporate their introductory
20  statement, above. Plaintiffs will introduce evidence in the form of testimony from
21  Disney executives and employees establishing that Disney knew the DAS would
22  not accommodate guests such as C.M.H. and that such guests would suffer a
23  disparate impact when Disney unleashed the DAS. The testimony and
24  documentary evidence will show that Disney developed a sophisticated
25  knowledge of the needs of guests with cognitive disabilities such as autism, and
26  knew that certain of these guests were unable to wait for extended periods of time
27  without suffering from emotional distress as a result of their disabilities. Plaintiffs
28

DOGALI LAW GROUP, P.A.

Page 13

DOGALI LAW GROUP, P.A.

will introduce documentary evidence in the form of internal communications, memoranda, and studies proving that Disney knew that unleashing the DAS would result in emotional harm to guests with cognitive disabilities such as autism, which prevents such guests from waiting for an extended period of time.

The testimony and documentary evidence will show that Disney assumed the duty, in part because of its obligations to comply with the ADA and Unruh Act, to conduct an individual assessment of disabled guests and to reasonably accommodate their disabilities. The documentary evidence will show that Disney was negligent in ignoring the warnings provided by executives and employees historically tasked with providing accommodations to guests with disabilities, clear warnings that unleashing the DAS would result in harm to such disabled guests. The evidence will show that it was reasonably foreseeable to Disney that its negligence in assessing and accommodating guests with disabilities would result in severe emotional distress to those guests with cognitive disabilities such as autism.

C.M.H. will provide testimony and documentary evidence establishing that during the years prior to the DAS, they enjoyed their visits to the Disney parks, and were able to access the rides and attractions with the accommodation Disney previously provided. However, once Disney implemented the DAS, C.M.H. faced extended wait times and disruptions in routine, causing him to experience severe emotional distress despite his parents' best efforts to work with the new system. Their inability to endure the extended wait times and disruptions is the result of C.M.H.s disabilities, and the situation is one which Disney could easily accommodate, but refuses to do so.  C.M.H.'s mother, Plaintiff H.A.H., has also suffered emotional distress as a result of Disney's refusal to accommodate her child.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOGALI LAW GROUP, P.A.

### c. *Claim 3: Violation of the California Unruh Civil Rights Act*

<u>Summary</u>:  Plaintiffs will prove their entitlement to relief under the Unruh Act through both mechanisms: Cal. Civ. Code § 51(b), which provides a state law remedy for intentional discrimination; and Cal. Civ. Code § 51(f), which provides a state law remedy for discrimination which violates the Americans with Disabilities Act.

<u>Elements</u>. To prevail on a disability discrimination claim under the Unruh Civil Rights Act, a plaintiff must establish the following:

1. The defendant denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services;

2. A motivating reason for defendant's conduct was plaintiff's disability;

3. The plaintiff was harmed;

4. The defendant's wrongful conduct was a substantial factor in causing plaintiff's injury.

*Johnson v. Dhami*, 2014 WL 4368665, *3 (E.D. Cal. 2014); California Civil Jury Instructions (CACI), No. 3020.

The Unruh Act expressly provides that a violation of ADA constitutes a violation of the Unruh Act. Cal. Civ.Code § 51(f).  Where a plaintiff seeks to establish liability under the Unruh Act by showing a violation of the Unruh Act, they need not prove intentional discrimination. *Johnson v. Dhami, Id.* at *3; *Munson v. Del Taco, Inc.,* 208 P.3d 623 (Cal. 2009).

Where a plaintiff seeks to establish liability under the Unruh Act independent of ADA, Plaintiffs must show intentional discrimination. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009)).

Intentional discrimination under the Unruh Act can be shown through proof of "willful, affirmative misconduct." *Greater Los Angeles Agency on Deafness,*

Page 15

742 F.3d at 425, <u>citing</u> *Koebke v. Bernardo Heights Country Club*, 115 P.3d 1212, 1228 (Cal. 2005)); *Gutierrez v. Gonzalez*, 2017 WL 1520419, *6 (C.D. Cal. Apr. 26, 2017); *Levine v. Sleep Train*, 2016 WL 2961100, *5 (E.D. Cal. 2016), <u>rep. and rec. adopted</u>, 2016 WL 3418350 (E.D. Cal. 2016); *Banga v. Kanios*, 2016 WL 7230870, *4 (N.D. Cal. 2016).

<u>Key Evidence in Support of Claim</u>:  Plaintiffs intend to introduce testimony and documentary evidence which is essentially the same as that which will be offered in support of their common law tort claims, as outline above. They will also introduce evidence that Disney has violated the Americans with Disabilities Act, which will result in a judgment for Plaintiffs on this Unruh Act claim.

### 2.  Prayer for Relief – Damages

On all claims, Plaintiffs seek monetary damages to compensate them for their emotional distress suffered as a result of Disney's intentional and negligent conduct in an amount to be determined by the jury.

On their claim for intentional infliction of emotional distress, Plaintiffs also seek punitive damages for Disney's intentional and outrageous conduct in an amount to be determined by the jury.

On their claim under the Unruh Act, Plaintiffs also seek up to three times their actual damages, as a result of Disney's intentional and morally offensive conduct.

### B. SUMMARY OF DEFENDANT'S AFFIRMATIVE DEFENSES AND KEY EVIDENCE IN OPPOSITION TO DEFENDANT'S AFFIRMATIVE DEFENSES (L.R. 16-4.1(d), (f))

Disney has asserted thirty (30) "affirmative defenses" which lack any alleged or actual factual basis or foundation, leaving Plaintiffs unable to predict the evidence to be offered at trial. Moreover, many of the affirmative defenses are not affirmative defenses, but are simple denials of Plaintiffs' claims or bare statements of Disney's versions of various facts or issues. Generally, the following

Page 16

Plaintiffs' Memorandum of Contentions of Fact and Law
*T.P., et al. v. Walt Disney Parks & Resorts US, Inc.*                    *Case No. 15-CV-5346*

DOGALI LAW GROUP, P.A.

affirmative defenses do not state a cognizable affirmative defense: First (failure to state a claim); Sixth (standing); Seventh (no injury and no standing); Eighth (Defendant's compliance with laws); Eleventh (Plaintiffs' failure to follow procedures); Twelfth (failure to request modification); Thirteenth (requested modification not reasonable); Fourteenth (requested modification not necessary); Sixteenth (Plaintiffs' accommodation not required by law); Seventeenth (Plaintiffs' needs were accommodated); Eighteenth (Defendant did not discriminate); Nineteenth (no modifications required and Defendant acted in good faith); Twentieth (Plaintiffs' damages caused by pre-existing conditions); Twenty-Second (no emotional distress); Twenty-Third (no violation of legal duty); Twenty-Fourth (inadequate proof to support punitive damages); Twenty-Fifth (no punitive damages for breach of contract); Twenty-Sixth (adequate remedy at law); Twenty-Seventh (unjust enrichment); Twenty-Eighth (defense attorneys' fees under Cal. Civ. Code. §55); Thirty-First (reservation of any and all other affirmative defenses).

The following affirmative defenses are not proper affirmative defenses because no facts have been alleged or offered to support them: First (failure to state a claim); Second (statute of limitations); Third ("payment, release and/or accord and satisfaction"); Fourth (failure to mitigate damages); Fifth ("unclean hands, waiver, abandonment, laches, estoppel, and/or other equitable defenses"); Sixth (standing); Seventh (no injury and no standing); Ninth (waiver); Tenth (estoppel); Eleventh (Plaintiffs' failure to follow procedures); Twenty-First (Plaintiffs damages caused by "intervening, superseding and/or supervening actions of others"); Twenty-Sixth (adequate remedy at law).

The following affirmative defenses are not proper affirmative defenses as a matter of law, because they are "catch-all" defenses which attempt to assert or preserve multiple commingled defenses without stating which one is actually to be

pursued: Third ("payment, release and/or accord and satisfaction"); Fifth ("unclean hands, waiver, abandonment, laches, estoppel, and/or other equitable defenses"); Twenty-First (Plaintiffs' damages caused by "intervening, superseding and/or supervening actions of others"); Thirty-First (reservation of any and all other affirmative defenses).

### C. SUMMARY OF EVIDENTIARY ISSUES (L.R. 16-4.1(h)

Plaintiff does not know which issues of evidence, if any, will require resolution by the Court before trial.

### D. IDENTIFICATION OF ISSUES OF LAW  (L.R. 16-4.1(i))

Plaintiff does not know which issues of law, if any, will require resolution by the Court before trial.

### III.    **JURY TRIAL (L.R. 16-4.4)**

#### A. ISSUES TRIABLE TO THE JURY

A timely demand for jury trial has been made.  The following issues are triable to the jury:

- Whether Disney breached its duty to provide C.M.H. with an individualized assessment of his special needs, to provide reasonable accommodation for his disability, and to provide a reasonable modification of Disney's disability policy to accommodate his special needs.

- Whether Disney's conduct violated the ADA and the Unruh Act.

- Whether Disney acted intentionally, maliciously, oppressively and/or recklessly in failing to provide C.M.H. with an individual assessment of and reasonable accommodation for his disability.

- Whether Disney knew that its new DAS program would not adequately accommodate guests such as C.M.H. who suffer from severe cognitive disabilities and impairments.

DOGALI LAW GROUP, P.A.

Plaintiffs' Memorandum of Contentions of Fact and Law
*T.P., et al. v. Walt Disney Parks & Resorts US, Inc.*                                      *Case No. 15-CV-5346*

- Whether Plaintiffs suffered damages, and, if so, whether Disney's conduct was the proximate cause of such damages.
- The amount of economic damages to which Plaintiffs are entitled.
- The amount of damages to which Plaintiffs are entitled as a result of their emotional distress.
- Whether Disney's conduct was of such a nature as to entitle Plaintiffs to punitive damages, and, if so, the appropriate amount of such damages.

### B.  ISSUES TRIABLE TO THE COURT

The following issues are triable to the Court: None.

## IV.   ATTORNEY'S FEES (L.R. 16-4.5)

Plaintiffs' claims do not include a request for attorneys' fees as an element of damages. Plaintiffs claim entitlement to attorneys' fees in the event they prevail on their Unruh Act claims.

## CERTIFICATE OF SERVICE

I CERTIFY that on this 29th day of March, 2019, a true and correct copy of the foregoing was furnished via electronic mail to:

**Kerry A. Scanlon, Esq.**
**Jeremy White, Esq.**
McDermott Will & Emery LLP
The McDermott Building
500 North Capital Street, N.W.
Washington, DC  20001
kscanlon@mwe.com;
jmwhite@mwe.com

**Chris C. Scheihauer, Esq.**
McDermott Will & Emery LLP
4 Park Plaza, Ste 1700
Irvine, CA  92614
cscheithauer@mwe.com

DOGALI LAW GROUP, P.A.

1

2

3

_/s/Andy Dogali_____

4

**Andy Dogali**

**Barbara U. Uberoi**

5

Dogali Law Group, P.A.

401 East Jackson St., Ste 1825

6

Tampa, FL 33602

7

(813) 289-0700

8

adogali@dogalilaw.com

buberoi@dogalilaw.com

9

10

**Eugene Feldman**

Arias, Sanguinetti, Wang & Torrijos, LLP

11

6701 Center Drive West

12

Suite 1400

Los Angeles, CA  90045

13

(310) 844-9696

14

gfeldmanlaw@att.net

15

16

**Jennifer A. Lenze**

**Amanda D. McGee**

17

Lenze Lawyers, PLC

1300 Highland Ave. Suite 207

18

Manhattan Beach, CA 90266

19

(310) 322-8800

20

jlenze@lenzelawyers.com

mcgee@lenzelawyers.com

21

_Attorneys for Plaintiffs_

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Contentions of Fact and Law
_T.P., et al. v. Walt Disney Parks & Resorts US, Inc._                    _Case No. 15-CV-5346_

DOGALI LAW GROUP, P.A.