
NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| T.P.; et al., | ) | CASE NO. CV 15-5346-R |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTIONS FOR SUMMARY JUDGMENT |
| v. | ) | ON THE CLAIMS OF (1) PLAINTIFFS |
| | ) | C.M.H. AND H.A.H. AND (2) |
| WALT DISNEY PARKS AND RESORTS | ) | PLAINTIFFS J.A.S. AND J.F.S. |
| U.S., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are Defendant's Motions for Summary Judgment on the claims of (1) Plaintiffs C.M.H. and H.A.H. and (2) Plaintiffs J.A.S. and J.F.S., each filed on April 8, 2019. (Dkt. Nos. 304, 306). Having been thoroughly briefed by the parties, this Court took the matters under submission on April 26, 2019.

Each of the Plaintiffs brought statutory claims under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"), alleging that Defendant Walt Disney Parks and Resorts U.S., Inc.'s ("Defendant") disability accommodation program, the Disney Disability Access Service ("DAS"), fails to sufficiently accommodate Plaintiffs, who suffer from cognitive disabilities. Plaintiffs also brought related common law claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of contract.

Defendant seeks summary judgment on all claims brought by Plaintiffs C.M.H., H.A.H., J.A.S., and J.F.S.  J.A.S. and J.F.S. have not offered a brief in opposition, nor have they requested an extension of time to file one.  C.M.H. and H.A.H. filed a sealed Opposition with the Court on May 15, 2019.

Plaintiff C.M.H. is 28 years old and is disabled by severe autism.  Despite having the chronological age of a man, C.M.H. has the mental (intellectual, emotional, etc.) age of no more than a ten-year-old and the comprehension level of no more than a seven-year-old.  His mother, H.A.H., and his father have been the primary caregivers for C.M.H. his entire life.  C.M.H.'s disability makes him unable to understand the concept of time, causes him to have difficulty waiting and transitioning between activities, and makes him prone to having "meltdowns" due to the presence of large crowds, loud noises, lights, touching, and overstimulation.  These difficulties are exacerbated in unfamiliar environments.

Plaintiff J.A.S. was, at the time this action was filed, a minor generally in the care of his father, J.F.S.  J.A.S. suffers from autism with characteristics of Attention Deficit Disorder.  Like C.M.H., J.A.S. has difficulty waiting and understanding the concept of time.  J.A.S. also has difficulty deviating from a routine.  For example, when visiting Disney's California Adventure, he always must ride four specific rides, in no particular order.  So long as he is able to do so, "J.A.S. will have a pleasant Disney experience," according to the Complaint.  When forced to deviate from his routine, or in other exacerbating circumstances, J.A.S. experiences anxiety, stimming (which, according to the Complaint, is defined in part by "echolalia and running back and forth and running in between people in large crowds"), panic attacks, and other "maladaptive behaviors."

The DAS, which was introduced in October 2013, allows DAS cardholders to avoid physical lines and "virtually" wait for entry to attractions at Disneyland and Disney's California Adventure parks in Anaheim, California.  The electronic version of DAS has existed at Disney's Anaheim parks since late-2014.  DAS return times, which are the posted ride wait times minus ten minutes, are issued at kiosks or attractions located inside the parks.  Guests are permitted to visit other attractions within the parks while they wait for their return times.  DAS cardholders may

also typically gain immediate entry to attractions with posted wait times of less than 15 minutes. In addition to DAS, Guest Relations employees are available to help guests plan their itineraries, provide "re-admission passes" granting immediate entry to certain rides, or otherwise provide individualized assistance.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To meet its burden of proof on a motion for summary judgment, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587.

**Americans with Disabilities Act and Unruh Act Claims**

Tittle III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A prima facie case for violation of the ADA requires a plaintiff to show that: (1) he is disabled within the meaning of the ADA; (2) the defendant owned, leased, or operated a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA. *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). Defendant does not

1  dispute that Plaintiffs are disabled within the meaning of the ADA or that Defendant operates a
2  place of public accommodation, specifically Disneyland and Disney's California Adventure parks.
3  Therefore, the sole issue is whether Defendant discriminated against Plaintiffs within the meaning
4  of the ADA.

5  ADA § 12182(b)(2)(A)(ii) defines discrimination to include "a failure to make reasonable
6  modifications in policies, practices, or procedures, when such modifications are necessary to
7  afford such goods, services, facilities, privileges, advantages, or accommodations to individuals
8  with disabilities, unless the entity can demonstrate that making such modifications would
9  fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or
10 accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii). As the Supreme Court noted in *PGA Tour,*
11 *Inc. v. Martin*, § 12182(b)(2)(A)(ii) contemplates three inquiries: (1) whether the requested
12 modification is "reasonable," (2) whether it is "necessary" for the disabled individual, and (3)
13 whether it would "fundamentally alter the nature of" the accommodation. 532 U.S. 661, 683 n.38
14 (2001).

15 Like other Plaintiffs in this action, C.M.H. and H.A.H. have brought to this Court's
16 attention the recent decision of the Eleventh Circuit Court of Appeals in *A.L. v. Walt Disney Parks*
17 *& Resorts U.S., Inc.*, 900 F.3d 1270 (11th Cir. 2018). That decision was based in large part on
18 that court's interpretation of what is a "necessary" modification under § 12182(b)(2)(A)(ii) of the
19 ADA. The court cites to Ninth Circuit authority in *Baughman v. Walt Disney World Co.*, where
20 the Ninth Circuit Court of Appeals explained that "[p]ublic accommodations must start by
21 considering how their facilities are used by nondisabled guests and then take reasonable steps to
22 provide disabled guests with a *like experience*." 685 F.3d 1131, 1135 (9th Cir. 2012) (emphasis
23 added). Public accommodations must "provide disabled patrons an experience comparable to that
24 of able-bodied patrons." *Id.*

25 This Court previously considered the "like experience" standard and found it beyond
26 dispute that Plaintiffs' proposed modifications are not "necessary" within the meaning of the
27 ADA. The ADA requires that Defendant provide an equal experience, not that its disability
28 accommodation program must provide Plaintiffs' preferred or best possible experience. *See, e.g.*,

1  *PGA Tour*, 532 U.S. at 682 (suggesting that an accommodation allowing physically disabled PGA
2  Tour participants to use a golf cart during events "might be reasonable but not necessary" where
3  walking would be "uncomfortable or difficult, but not beyond their capacity"); *Murphy v. Bridger*
4  *Bowl*, 150 F. App'x 661, 663 (9th Cir. 2005) (holding that allowing plaintiff with cognitive
5  disability to be accompanied by a companion on a ski bike was not a necessary accommodation,
6  even though it would improve her skiing experience).

7       By providing a program which ensures that families of guests with cognitive disabilities
8  can schedule ride times in advance, have near-immediate access to rides with wait times of less
9  than 15 minutes, and never have to wait in a physical line, Defendant's DAS program adequately
10 provides its disabled guests with a "like experience" which is "comparable to that of able-bodied
11 patrons."  In circumstances where the DAS program alone is insufficient, Defendant allows
12 families of disabled patrons to seek individualized assistance from its Guest Relations office,
13 which is given discretion to assist such guests by, among other things, providing them with an
14 itinerary or giving them re-admission passes which allow the guests to avoid the stand-by line at
15 specified attractions after a certain time of day.  By giving Guest Relations employees discretion
16 to tailor such assistance to the individualized needs of the guest and also to consider the conditions
17 of the parks on any given day, Defendant is not only able to provide what is "necessary" for those
18 guests to fully and equally enjoy the Disney parks, but also to account for what is reasonable
19 under the circumstances and to avoid fundamentally altering the nature of the park experience.
20 Because Plaintiffs cannot prove that their requested modifications[1] are "necessary" within the
21 meaning of the ADA, they cannot prevail on their claims under the ADA.

22      Likewise, Plaintiffs cannot prevail on their claims under California's Unruh Act, which, as
23 Plaintiffs C.M.H. and H.A.H. acknowledge in their Opposition brief, are derivative of and
24 coextensive with their ADA claim.  *See* Cal. Civ. Code § 51(f).  To prevail on their Unruh Act
25 claims, Plaintiffs must prove (1) that they were denied full and equal accommodations by
26 Defendant; (2) that a "substantial motivating reason" for Defendant's conduct was a Plaintiff's

---

[1] Plaintiffs essentially argue for a return to Defendant's previous Guest Assistance Card system, which provided near-unfettered and immediate access to many disabled patrons and which was discontinued by Defendant due to what Defendant believed to be rampant abuse of the system.

5

disability or other actionable characteristic; (3) that Plaintiff was harmed; and (4) that Defendant's conduct was a substantial factor in causing Plaintiff's harm.  Judicial Council of California Civil Jury Instructions 3060.  For the reasons discussed above with respect to Plaintiffs' ADA claims, Plaintiffs cannot prevail under the Unruh Act.

**Breach of Contract Claims**

All Plaintiffs assert claims for breach of contract.  In order to prevail on a breach of contract claim, Plaintiffs must establish that: (1) the parties entered into a contract; (2) Disney breached the contract; and (3) Plaintiffs suffered damages as a result of Disney's breach.  *See Richman v. Hartley*, 169 Cal. Rptr. 3d 475, 478 (2014).  Plaintiffs contend that a contractual relationship was formed between them and Defendant through their purchase of annual passes and/or admission tickets.  Plaintiffs have not identified a particular contractual term that has allegedly been violated, and Defendant does not promise, at the time of purchase or otherwise, that all guests will receive their preferred, best possible, or even a satisfying experience.  The Court declines to read such an implied contractual term into the parties' business relationship.  Accordingly, Plaintiffs cannot prevail on their breach of contract claims.

**Negligent and Intentional Infliction of Emotional Distress Claims**

Finally, Plaintiffs assert claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED").  Under California law, NIED "is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply."  *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (citations omitted).  Plaintiffs' NIED claims, particularly the elements of duty and breach, are derivative of their ADA claims.  Accordingly, because Plaintiffs cannot establish any violation of the ADA, they cannot prove at least two of the essential elements of their NIED claims.

"The elements of a cause of action for [IIED] are (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress."  *Nally v. Grace Cmty. Church of the Valley*, 763 P.2d 948, 961 (Cal. 1988).  Outrageous conduct is conduct that is "so extreme as to exceed all bounds

1  of that usually tolerated in a civilized community." *Id.*  Again, Plaintiffs' IIED claims are
2  derivative of their claims under the ADA.  As discussed above, Plaintiffs cannot establish an ADA
3  violation.  Even if they could, Plaintiffs have presented no factual or legal support for a finding
4  that such conduct is "outrageous."  Accordingly, Plaintiffs cannot possibly prevail on a claim for
5  IIED.

6  **IT IS HEREBY ORDERED** that Defendant's Motions for Summary Judgment on the
7  Claims of (1) Plaintiffs C.M.H. and H.A.H. and (2) Plaintiffs J.A.S. and J.F.S. are GRANTED.
8  (Dkt. Nos. 304, 306).
9  Dated: May 24, 2019.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE