1  ANDY DOGALI (admitted *pro hac vice*)
2  adogali@dogalilaw.com
   Dogali Law Group, P.A.
3  19321 US Hwy 19 North, Suite 307
4  Clearwater, Florida 33764
   Tel:   (813) 289-0700
5

6  EUGENE FELDMAN (CA Bar No. 118497)
7  Eugene@aswtlawyers.com
   Arias, Sanguinetti, Wang & Torrijos, LLP
8  6701 Center Drive West, Suite 1400
9  Los Angeles, CA  90045
   Telephone: (310) 844-9696
10

11  JENNIFER A. LENZE (CA Bar No.: 246858)
12  jlenze@lenzelawyers.com
   1300 Highland Ave. Suite 207
13  Manhattan Beach, CA 90266
14  Telephone (310) 322-8800
   *Attorneys for Plaintiffs*
15

16              **UNITED STATES DISTRICT COURT FOR THE**
                   **CENTRAL DISTRICT OF CALIFORNIA**
17

18  **T.P., et al.,**                  )   **Case No.: 15-cv-5346-CJC-E**
                                        )
19              **Plaintiffs,**         )   **PLAINTIFFS' OPPOSITION TO**
                                        )   **DEFENDANT'S MOTION FOR**
20                                      )   **SUMMARY JUDGMENT ON**
21          **v.**                      )   **K.A.C.'S AND J.L.C.'S CLAIMS**
                                        )
22  **WALT   DISNEY   PARKS   AND**     )   **Date:   November 23, 2020**
23  **RESORTS U.S. INC.,**             )   **Time: --:-- p.m.**
                                        )   **Hon. Cormac J. Carney**
24              **Defendant.**          )   **Courtroom: 9B**
25  _____/

26       Plaintiffs, K.A.C., by and through J.L.C., as Next Friend, Parent and Natural

27  Guardian, and J.L.C., individually, offer the following arguments and authorities in

28

                                    Page i

opposition to Defendant's Motion for Summary Judgment on K.A.C.'s and J.L.C's Claims. [D. 445-3].

## I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ................................................................................. 2

II. TABLE OF AUTHORITIES ........................................................................ 3

III. INTRODUCTION ...................................................................................... 1

IV. SUMMARY JUDGMENT STANDARD ................................................... 2

V. ARGUMENT ............................................................................................... 3

    A.   PLAINTIFF'S AUTISM CREATES HIS INABILITY TO ENDURE WAIT TIMES AND HIS NEED TO ADHERE TO ROUTINE .............................. 5

    B.   ADA REQUIRES INDIVIDUALIZED INQUIRY ..................................... 8

    C.   NECESSITY IS A FACT-BASED DETERMINATION INAPPROPRIATE FOR SUMMARY JUDGMENT ........................................................................ 8

    D.   REASONABLENESS IS A FACT-BASED DETERMINATION INAPPROPRIATE FOR SUMMARY JUDGMENT .................................... 12

    E.   FUNDAMENTAL ALTERATION IS A FACT-BASED DETERMINATION INAPPROPRIATE FOR SUMMARY JUDGMENT .................................... 14

    F.   K.A.C.'S NECESSARY MODIFICATION IS NOT THE SAME AS A.L.'S OR GALVAN'S, NOR IS THE EXTENT TO WHICH IT MIGHT ALTER DISNEY'S BUSINESS ............................................................................................... 17

        1.   K.A.C.'s disability differs from A.L.'s and Galvan's ........... 17

        2.   All parks are not the same ....................................................... 18

        3.   K.A.C.'s modification necessarily creates a different impact on Disney's systems .................................................................. 18

    G.   IN RELATION TO INJUNCTIVE RELIEF, THE COURT MUST EVALUATE THE IMPACT OF PLAINTIFF'S REQUESTED MODIFICATION TODAY, AND IN THE FUTURE, NOT SOLELY IN THE PAST ........................... 19

H.   WAIT TIMES ARE "PERIPHERAL" TO THE SERVICES OFFERED ..... 20

I.   EACH OF PLAINTIFFS' STATE LAW CLAIMS REQUIRES A FACT-
BASED DETERMINATION INAPPROPRIATE FOR SUMMARY
JUDGMENT .................................................................................... 22

1.   Unruh Act ...................................................................... 22

2.   Common law claims ...................................................... 23

VI. CONCLUSION ...................................................................................... 25

VII. CERTIFICATE OF SERVICE ............................................................... 27

## II. TABLE OF AUTHORITIES

CASES

*A.L. v. Walt Disney Parks & Resorts U.S., Inc.*,
900 F.3d 1270 (11th Cir. 2018) .......................................................... passim

*A.L. v. Walt Disney Parks & Resorts US, Inc.*,
__ F. Supp. 3d __, 2020 WL 3415008 (M.D. Fla. Jun. 22, 2020) ................. 4

*Agarwal v. Johnson*,
603 P.2d 58, 72 (1979) ................................................................... 24

*Alcaraz v. United States*,
2013 WL 4647560 (N.D. Cal. 2013) ............................................... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (US 1986) .................................................................. 2

*Argenyi v. Creighton University*,
703 F.3d 441  (8th Cir. 2013) ...................................................... 9, 12

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,
603 F.3d 666 (9th Cir. 2010) ........................................................... 3

*Balint v. Carson City, Nevada*,
180 F.3d 1047 (9th Cir. 1999) ...................................................... 15

*Baughman v. Walt Disney World Co.*,
  685 F. 3d 1131 (9th Cir. 2012) .............................................................. passim

*Bircoll v. Miami-Dade Cty.*,
  480 F.3d 1072 (11th Cir. 2007) .................................................... 13

*Brooke v. Suites LP*,
  2020 WL 6149963 (S.D. Cal. Oct. 19, 2020 .................................................... 3

*Buchanan v. Safeway Stores, Inc.*,
  1996 WL 723089 (N.D. Cal. 1996) .................................................. 2

*California by & through Becerra v. U.S. EPA*,
  2020 WL 6193497 (9th Cir. Oct. 22, 2020) .................................................... 19

*Casey v. Russell*,
  188 Cal. Rptr. 18 (Cal. App. 1982) .............................................. 23

*Castillo v. Lundt & Sprungli USA Inc.*,
  2019 WL 6910354 (C.D. Cal. 2019) .......................................... 23

*Celotex Corp. v. Catrett*,  477 U.S. 317, 323 (1986).......................................... 2

*Cherkaoui v. City of Quincy*,
  877 F.3d 14 (1st Cir. 2017) .................................................... 2

*City of Long Beach v. Standard Oil Co.*,
  872 F.2d 1401 (9th Cir. 1989) .................................................... 2

*City of Long Beach v. Standard Oil Company*,
  886 F.2d 246 (9th Cir. 1989) .................................................... 2

*City of Los Angeles v. Superior Court*,
  2006 WL 1868500 (Cal. App. 2006) ........................................ 24

*Clemons v. Nike, Inc.*,
  2017 WL 2890972 (D. Or. Sept. 28, 2007) ................................... 2

*CM ex rel. JM v. Board of Public Education of Henderson County*,
  184 F. Supp. 2d 466 (W.D. N.C. 2002) ....................................... 7

*Crowder v. Kitagawa*,

1      81 F.3d 1480 (9th Cir. 1996) .................................................................12, 15

2    *DeSalvo v. Islands Restaurants, L.P.*,

3      2020 WL 4035071 (C.D. Cal. July 16, 2020) ............................................... 22

4    *Duvall v. County of Kitsap*,

5      260 F.3d 1124 (9th Cir. 2001) ..................................................................... 4

6    *Easley v. Snider*,

7      36 F.3d 297 (3d Cir. 1994) ........................................................................ 13

8    *Flores v. Huppenthal*,

9      789 F.3d 994 (9th Cir. 2015) ...................................................................... 19

10    *Forbes v. St. Thomas Univ., Inc.*,

11      768 F. Supp. 2d 1228 (S.D. Fla. 2010) ......................................................... 13

12    *Fortyune v. Am. Multi-Cinema, Inc.*,  364 F.3d 1075 (9th Cir. 2004) ........11, 15

13    *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*,

14      425 F. Supp. 3d 1234 (C.D. Cal. 2019) ......................................................... 4

15    *Galvez v. Frields*,

16      107 Cal. Rptr. 2d 50 (Cal. App.2001) ......................................................... 23

17    *Garrido v. Dudek*,

18      731 F.3d 1152 (11th Cir. 2013) ................................................................... 5

19    *Gibson v. Forest Hills School District Board of Education*,

20      2013 WL 2618588 (S.D. Ohio 2013) ............................................................. 7

21    *Giebeler v. M & B Associates*,

22      343 F.3d 1143 (9th Cir. 2003) ................................................................... 22

23    *Goldsmith v. CVS Pharmacy, Inc.*,

24      2020 WL 3966004 (C.D. Cal. May 5, 2020) ................................................. 23

25    *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,

26      742 F.3d 414 (9th Cir. 2014) ..................................................................... 22

27    *Grove v. De La Cruz*,

28      407 F. Supp. 2d 1126 (C.D. Cal. 2005) ....................................................... 22

Page v

*Han v. City of Folsom*,

   695 F. Appx. 197 (9th Cir. 2017) ........................................................ 3

*Haschmann v. Time Warner Entertainment Co.*,

   151 F.3d 591 (7th Cir. 1998) ............................................................. 13

*Hernandez v. Amcord, Inc.*,

   156 Cal. Rptr. 3d 90 (Cal. App. 2013) .............................................. 24

*Holmes v. Home Depot USA, Inc.*,

   2008 WL 4966098 (E.D. Cal. 2008) ................................................. 24

*Hopper v. City of Pasco*,

   241 F.3d 1067 (9th Cir. 2001) ........................................................... 25

Horne v. Flores,

   557 U.S. 433 (2009) ......................................................................... 19

*Hubbard v. Twin Oaks Health & Rehabilitation Center*,

   408 F. Supp. 2d 923 (E.D. Cal. 2004) .............................................. 22

*In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a*
   *Similar Neurodevelopmental Disorder*,

   2002 WL 31696785 (Ct. Fed. Cl. 2002) ............................................. 5

*In re Software Toolworks Inc.*,

   50 F.3d 615 (9th Cir. 1994) ............................................................... 25

*J.D. by Doherty v. Colonia Williamsburg Foundation*,

   925 F.3d 663 (4th Cir. 2019) ............................................................ 11

*Johnson v. Gambrinus Co./Spoetzl Brewery*,

   116 F.3d 1052 (5th Cir. 1997) .......................................................... 16

*Johnson v. McBain*,

   2018 WL 5840611 (N.D. Cal. 2018) ................................................... 3

*Lema v. Comfort Inn*,

   2013 WL 1345510 (E.D. Cal. 2013) ................................................. 22

*Lyon v. England*,

307 F.3d 1092 (9th Cir. 2002) ............................................................... 2, 8

*Mandeville v. Onoda  Cement Co.*,

67 F. App'x 417 (9th Cir. 2003) ............................................................ 23

*Matthews v. NCAA*,  179 F. Supp. 2d 1209 (E.D. Wash. 2001) ..................... 14

*McElroy v. Pac. Autism Center for Education*,

2016 WL 3029782 (N.D. Cal. 2016) ......................................................... 24

*McGann v. Cinemark*,

873 F.3d 218 (3rd Cir. 2017) ................................................................. 12

*McKinnon v. Talladega County*,

745 F.2d 1360 (11th Cir. 1984) .............................................................. 19

*Molski v. M.J. Cable, Inc.*,

481 F.3d 724 (9th Cir. 2007) ................................................................... 3

*Munson v. Del Taco, Inc.*,

46 Cal. 4th 661 (Cal. 2009) ................................................................... 22

*Mutual Fund Investors, Inc. v. Putnam Mgmt. Co.*,

553 F.2d 620 (9th Cir. 1977) ................................................................. 25

*Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*,

339 F.3d  1126  (9th Cir. 2003) ............................................................. 11

*Paletz v. Adaya*,

2014 WL 7402324 (Cal. App. 2014) ........................................................ 24

*Pardi v. Kaiser Found. Hosps.*,

389 F.3d 840 (9th Cir. 2004) ................................................................. 25

*PGA Tour, Inc. v. Martin*,

532 U.S. 661, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) ................... passim

*Pierce v. County of Orange*,

2014 WL 12884512 (C.D. Cal. Feb. 10, 2014) .......................................... 19

*Pierce v. County of Orange*,

761 F. Supp. 2d 915 (C.D. Cal. 2011) ..................................................... 17

Page vii

*Prado v. Swarthout*,

   816 F. App'x 148 (9th Cir. Aug. 11, 2020) ..................................................... 4

*Ramirez v. Plough, Inc.*,

   863 P.2d 167 (Cal. 1993) ............................................................................ 23

*Redding v. Nova Southeastern Univ., Inc.*,

   165 F. Supp. 3d 1274 (S.D. Fla. 2016) ....................................................... 13

*Roman v. Wolf*,

   2020 WL 6040125 (9th Cir. Oct. 13, 2020) ................................................ 20

*Rueda Vidal v. U.S. Department of Homeland Security*,

   2019 WL 7899948 (C.D. Cal. 2019) ........................................................... 19

*Samela v. Astrue*,

   2011 WL 821088 (D. Minn. 2011) ............................................................... 7

*San Diego Gas & Electric Co. v. Canadian Hunter Marketing Ltd.*,

   132 F.3d 1303 (9th Cir. 1997) .................................................................... 25

*Saylor v. Zeenat, Inc.*,

   2002 WL 33928621 (E.D. Cal. Dec. 24, 2002) .......................................... 24

*Shuster v. Commissioner of Social Security*,

   2017 WL 103932 (S.D. Ohio 2017) ............................................................. 7

*Spates v. Dameron Hosp. Assn.*,

   114 Cal. App. 4th 208 (Cal. App. 2003) ..................................................... 24

*Spriesterbach v. Holland*,

   155 Cal. Rptr. 3d 306 (Cal. App. 2013) ...................................................... 23

*Staron v. McDonald's Corp.*,

   51 F.3d 353 (2d Cir. 1995) .......................................................................... 13

*T.W. v. School Board of Seminole County*, 610 F.3d 588 (11th Cir. 2010) ...... 7

*Tennessee v. Lane*,

   541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) ............................. 10

*Theroux v. Mar-Con Production, Inc.*,

2019 WL 6829096 (S.D. Cal. 2019) ............................................................. 3

*Tortorella v. Castro,*

140 Cal.App.4th 1 (2006) ........................................................................ 24

*Townsend v. Quasim*,

328 F.3d 511 (9th Cir. 2003) ............................................................. 15, 24

*Tusji v. Kamehama Schools,*

154 F. Supp. 3d 964 (D. Hi. 2015) ......................................................... 2, 8

*Uhls v. OfficeMax, Inc.*,

2002 WL 33928620 (E.D. Cal. 2002) ....................................................... 24

*United States v. Terzakis*,

854 F.3d 951 (7th Cir. 2017) ..................................................................... 7

*Vickers v. United States*,

228 F.3d 944 (9th Cir. 2000) ................................................................... 23

*Vollaro v. Lispi*,

168 Cal. Rptr. 3d 323 (Cal. App. 2014) .................................................. 23

*White v. Ultramar, Inc.*,

21 Cal. 4th 563 (1999) ........................................................................... 24

*Wilson v. Pier 1 Imports (US), Inc.*,

439 F. Supp. 2d 1054 (E.D. Cal. 2006) .................................................... 22

*Wong v. Regents of University of California*,

192 F.3d 807 (9th Cir. 1999) ......................................................... 9, 11, 13

*Wright v. New York State Department of Corrections,*

831 F.3d 64 (2d Cir. 2016) ........................................................................ 8

*Young v. Ohio,*

2013 WL 146365 (S.D. Ohio Jan. 14, 2013) ............................................ 5

**STATUTES**

42 United States Code Section 12102 ........................................................... 5

42 United States Code Section 12181(7) ....................................................... 4

Page ix

42 United States Code Section 12182(a) ....................................................... 3, 4

42 United States Code Section 12182(b) ........................................................ 3

42 United States Code Section 12182(b)(1)(B) ................................................ 4

42 United States Code Section 12182(b)(1)(C) ................................................ 4

42 United States Code Section 12182(b)(2)...................................................... 8

42 United States Code Section 12182(b)(2)(A)(ii)-(iii) .................................. 14

United States Code Section 12182(b)(2)(A) ............................................... 4, 12

**RULES**

Federal Rule of Civil Procedure 56(a) ........................................................... 2

**OTHER AUTHORITIES**

Comm. On Educ. Interventions for Children with Autism, Nat'l Research

    Council, <u>Educating Children with Autism,</u>

    (C. Lord & J. McGee eds. 2001) ............................................................. 6

Faja, S. & Dawson, G. "Reduced Delay of Gratification & Effortful Control

    Among Young Children with Autism Spectrum Disorders",

    19 Autism 91 (2015) ............................................................................... 6

Johnson, C & Meyers, S., "Identification and Evaluation of Children with

    Autism Spectrum Disorders",

    120 Pediatrics 1183 (2007)...................................................................... 6

Wright, Miller & Kane, *Federal Practice and Procedure, Civil* 2d § 2732.2

    (1998)..................................................................................................... 25

### III. INTRODUCTION

Disney's Disneyland Resort and California Adventure Park, like all other places of public accommodation, are not permitted to discriminate against their guests on the basis of the guests' disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, or accommodations.

J.L.C., as a parent of a child with cognitive disabilities,[1] will ask this Court and an empaneled jury to determine whether Disney's accommodations give her child who is severely disabled due to autism "meaningful access" to the Disney parks, or an "equal opportunity" to enjoy the Disney parks in relation to nondisabled guests, as required by the ADA and California's Unruh Civil Rights Act. Summary judgment is inappropriate because numerous fact questions exist as to key issues, including whether additional accommodations are necessary to allow K.A.C. to have an experience like that of other guests, whether proposed modifications to Disney's program are reasonable, whether accommodating K.A.C. would create a "fundamental alteration" of Disney's systems, whether a contract exists between Disney and the guest, and whether the parent of a child with autism who experiences her child's autism "meltdown" has suffered severe distress.

Plaintiffs' claims are as follows:

| Count 59 | Negligent infliction of emotional distress | K.A.C., through J.L.C. |
|----------|-------------------------------------------|------------------------|
| Count 60 | Intentional infliction of emotional distress | K.A.C., through J.L.C. |
| Count 61 | Violation of Unruh Act | K.A.C., through J.L.C. |
| Count 62 | Negligent infliction of emotional distress | J.L.C. |
| Count 63 | Intentional infliction of emotional distress | J.L.C. |
| Count 64 | Breach of contract | J.L.C. |

---

[1] J.L.C. and her son K.A.C. are one of twenty-six families that are parties to this action. Each family has one or more child who suffers from moderate to severe autism.

## IV. **SUMMARY JUDGMENT STANDARD**

Though not fitting in this case, summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  The moving party bears the burden of establishing the basis of its motion and demonstrate the absence of genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the plaintiff establishes a prima facie case, a rebuttable presumption shifts the burden to the defendant to offer evidence that the actions were taken for other than discriminatory reasons. *See Cherkaoui v. City of Quincy*, 877 F.3d 14, 24 (1st Cir. 2017); *Clemons v. Nike, Inc.*, 2017 WL 2890972, *6 (D. Or. 2007); *Buchanan v. Safeway Stores, Inc.*, 1996 WL 723089, *3 (N.D. Cal. 1996).

While weighing the appropriateness of evidence, the opposing party must be given the "full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after the scrutiny of each." *City of Long Beach v. Standard Oil Co.*, 872 F.2d 1401, 1404-05 (9th Cir. 1989) *amended on other grounds, City of Long Beach v. Standard Oil Company*, 886 F.2d 246, 247 (9th Cir. 1989).  "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (US 1986).

In a case alleging a violation of ADA case, such as the instant Unruh Act case, the plaintiff must offer only a minimal degree of opposition proof; the plaintiff's proffer need not establish a preponderance of the evidence, as may become necessary at trial. *See Tusji v. Kamehama Schools,* 154 F. Supp. 3d 964, 973 (D. Hi. 2015) quoting *Lyon v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (reversing summary judgment on the basis that a self-assessment of performance satisfies the opposing party's minimal burden).

Should the Court determine that federal claims will not lie, the Court must determine that no triable issues of material fact exist as to the state law claims. *See Han v. City of Folsom*, 695 F. Appx. 197, 198 (9th Cir. 2017).

## V. <u>ARGUMENT</u>

The essence of this litigation is whether the DAS requires modifications so that K.A.C. can have "meaningful access" and/or "equal opportunity" to experience Disney parks. Axiomatic principles to be applied in the Court's analysis include:

a. The Unruh Act plaintiff must provide evidence that he is disabled within the meaning of the ADA, that the defendant is a private entity that owns, leases or operates a place of public accommodation; and that the plaintiff was denied public accommodations by the defendant because of his disability. *See* 42 U.S.C. § 12182(a)-(b), *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

b. Violation of an individual's rights under the ADA constitutes a violation of the Unruh Act. *See* Cal. Civ. § 51.

c. Violation of an individual's rights under Title III of ADA entitles the plaintiff to injunctive relief, under both ADA and the Unruh Act. *Brooke v. Suites LP*, 2020 WL 6149963, *6 (S.D. Cal. Oct. 19, 2020) (a plaintiff's "sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act"), <u>quoting</u> *Theroux v. Mar-Con Prod., Inc.*, 2019 WL 6829096, *4 (S.D. Cal. 2019).

d. An Unruh Act plaintiff may also recover money damages, where intentional discrimination in public accommodations is shown. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007); *Johnson v. McBain*, 2018 WL 5840611, *4 (N.D. Cal. 2018).

e. The test for intentional discrimination is deliberate indifference. *Prado v. Swarthout*, 816 F. App'x 148, 149 (9th Cir. Aug. 11, 2020), *citing Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

The basic premise of the ADA is that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Disney, a public accommodation with operations that affect commerce,[2] is legally obligated to provide individuals with severe autism the opportunity to participate in and benefit from the same services, facilities, and accommodations afforded to other individuals. *See id.* § 12182(b)(2)(A), 42 U.S.C. § 12181(7). Opportunities to participate must be "the most integrated setting *appropriate to the needs of the individual*" so that the opportunity is "not separate or different" to those afforded to other individuals. 42 U.S.C. § 12182(b)(1)(B)-(C). It is this premise – that an accommodation must be the most integrated setting appropriate to the needs of the individual – that creates the question of fact that makes summary judgment inappropriate.[3]

---

[2] Courts regularly identify Disney's theme parks as a place of public accommodation within the meaning of Title III of the ADA. *See A.L. v. Walt Disney Parks & Resorts US, Inc.*, 2020 WL 3415008, * 14 (M.D. Fla. Jun. 22, 2020), *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*, 425 F. Supp. 3d 1234, 1239 (C.D. Cal. 2019) ("Places of public accommodation, like Disneyland").

[3] Plaintiffs endeavor to avoid calling out each of Disney's over-the-top memorandum statements. It is impossible to discern how Disney can represent to the Court, for example, that "it is undisputed that plaintiffs were provided equal access to the parks and that Disney did not violate the ADA" Doc. 445-3 at 26. Hoping perhaps that someone will forget that a lawsuit exists in which dozens of families dispute precisely these assertions, Disney repeats the same statement many times. *See also* Doc. 445-3, at 13, 14, 25, 26 (2x), 29. The Court should rest assured that each of these "undisputed" assertions is, in fact, disputed.

---

### A.    PLAINTIFF'S AUTISM CREATES HIS INABILITY TO ENDURE WAIT TIMES AND HIS NEED TO ADHERE TO ROUTINE

There is no question that K.A.C. has severe autism, epilepsy, hyperactivity disorder, developmental delay, and seizure disorder K.A.C. Stmt Facts ¶1. His condition limits his ability to take "car[e] of himself, perform[] manual tasks, ... learn[], read[], concentrat[e], think[], communicat[e]," form relationships and/or respond appropriately to environmental conditions. *See* 42 U.S.C. § 12102(1)-(2); *In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder*, 2002 WL 31696785, *1 n.2 (Ct. Fed. Cl. 2002) ("*In re Vaccine Injuries*"); *see Garrido v. Dudek*, 731 F.3d 1152, 1155 n.1 (11th Cir. 2013) (defining ASD as a neurodevelopmental disability that impairs "social interaction, verbal and non-verbal communication, leisure and play activities and learning.")  Autism is labeled a "spectrum disorder" because

> The "spectrum" of such disorders includes relatively high-functioning persons with speech and language intact, as well as persons who are mentally retarded, mute, or with serious language delays. Symptoms may include, but are not limited to, avoidance of eye contact, seeming "deafness," abrupt loss of language, unawareness of environment, physical abusiveness, inaccessibility, fixation, bizarre behavior, "flapping," repetitive and/or obsessive behavior, insensitivity to pain, social withdrawal, and extreme sensitivity to sounds, textures, tastes, smells, and light. National Institute of Mental Health, Publication 97–4023.

*In re Vaccine Injuries*, 2002 WL 31696785, *1 n.2.  K.A.C. falls on the extreme end of the spectrum categorized as severe. K.A.C. K.A.C. Stmt Facts ¶1. *See Garrido*, 731 F.3d at 1155 n.1 (recognizing that autism is one condition in a spectrum of pervasive development disorders), *Young v. Ohio*, 2013 WL 146365, *1 n.1 (S.D. Ohio 2013) (explaining that "There are varying degrees of severity for individuals afflicted with autism which can be categorized with three main types: High functioning autism, mild autism and severe autism"). A public accommodation must make an individualized inquiry to determine whether a

specific modification for the particular person's disability such as "severe autism" would be reasonable under the circumstances. *See PGA Tour, Inc. v. Martin,* 532 U.S. 661, 688, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) (affirming summary judgment for plaintiff golfer based on individualized review of modification in light of plaintiff's particular disability). The DAS does not contemplate such an individualized inquiry. *A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 900 F.3d 1270, 1278 (11th Cir. 2018) (noting Disney's contested assertion that it performs individualized inquiries for guests in addition to whatever benefit they obtain from DAS itself).

K.A.C. exhibits classic indicia of ASD. K.A.C. Stmt Facts ¶1. Courts recognize that studies have established that physical abnormalities from ASD contribute to behavioral symptoms including the reduced ability to "transition from an activity or topic of interest or when a usual routine is changed," the need to "preserve sameness," an inability to defer gratification and inability to exercise "effortful control." *See A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 900 F.3d 1270, 1285-1286 (11th Cir. 2018) (reversing summary judgment on finding triable issues of fact as to the necessity of changes to the DAS to provide those with severe ASD equal access as required by the ADA) *quoting* Johnson, C & Meyers, S., "Identification and Evaluation of Children with Autism Spectrum Disorders", 120 Pediatrics 1183, 1194 (2007), Comm. On Educ. Interventions for Children with Autism, Nat'l Research Council, Educating Children with Autism, 97 (C. Lord & J. McGee eds. 2001), Faja, S. & Dawson, G. "Reduced Delay of Gratification & Effortful Control Among Young Children with Autism Spectrum Disorders", 19 Autism 91, 99-101 (2015) ("Reduced Delay of Gratification"). Even children with far less severe cases of ASD than K.A.C. exhibit an inability to "show strong concentration, persist with tasks, wait before engaging with a task, easily stop an activity when told 'no,' and enjoy just sitting quietly." *Id. quoting* Faja, S., "Reduced Delay of Gratification."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As recognized by federal courts, ASD related impairments, including the inability to understand the concept of time, delay gratification and wait, are not unusual among persons with severe autism and cognitive impairments. *See United States v. Terzakis*, 854 F.3d 951, 953 (7th Cir. 2017) (considering credibility of witness on autism spectrum who had been found to have "a very poor grasp of time" and "difficulty with simple questions about the present"), *T.W. v. School Bd. of Seminole Cty.*, 610 F.3d 588, 607 (11th Cir. 2010) (reversing summary judgment in Rehabilitation Act claim due to a question of fact concerning child with ASD who exhibited "'difficulty waiting his turn … excitability…distractibility, a short attention span'"), *Shuster v. Commissioner of Social Security*, 2017 WL 103932, *4 (S.D. Ohio 2017) (reversing denial of benefits where evidence established child with ASD lacked the "'ability to delay gratification" and acted out "to have her needs met immediately'"), *Gibson v. Forest Hills School Dist. Bd. of Educ.*, 2013 WL 2618588, *25 (S.D. Ohio 2013) ("Given Student's cognitive limitation and lack of math skills, it is unlikely that she will be able to be effectively taught to grasp the concept of time beyond reading numbers on a digital clock"), *Samela v. Astrue*, 2011 WL 821088, *18 (D. Minn. 2011) (denying summary judgment due to question of fact where ASD plaintiff's medical providers established impulse control and an inability to delay gratification), *CM ex rel. JM v. Board of Public Educ. of Henderson County*, 184 F. Supp. 2d 466, 474 (W.D. N.C. 2002) (subject therapy program "relies on structure in the form of a daily schedule because autistic children have difficulty understanding the concept of time"). When examining K.A.C. individually, his severe ASD exhibited through his inability to transfer from an activity, topic of interest, or rule change, need to maintain sameness, inability to defer gratification and gross inability to wait, triggers a review of the DAS program to determine if modifications are reasonable and necessary.

### B.    ADA REQUIRES INDIVIDUALIZED INQUIRY

Section 12182(b)(2) requires a public accommodation to make reasonable modifications to its policies, practices and procedures as necessary to afford access to an individual with ASD, to ensure that they have meaningful access and an equal opportunity to experience the accommodation. *See PGA Tour, Inc.,* 532 U.S. at 688. An "individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person." *Id.* The Court cannot assess the necessity of a modification based on presumptions as to what "a class of individuals with disabilities can or cannot do." *Wright v. New York State Dep't of Corr.,* 831 F.3d 64, 77 (2d Cir. 2016) (vacating summary judgment noting that "ADA was enacted to eliminate discrimination against 'individuals' with disabilities" thus an individual assessment is justified).

Disney asks the Court to make an impermissible presumption that the DAS program accommodates without modification all individuals with ASD, whether mild or severe, as an alternative to examining K.A.C.'s severe ASD exhibited through his inability to transfer from an activity, topic of interest, or rule change; need to maintain sameness; inability to defer gratification and gross inability to wait.  Further, contrary to *Tusji* and *Lyon*, *supra*, Disney suggests that the Plaintiffs are presently required to prove their claims rather than showing that facts exist to support them. Assuming all facts in a light most favorable to the Plaintiffs, a necessary analysis requires factual determinations as to whether K.A.C. can transition between activities, vary fixed routines, or wait for extended periods or in highly stimulating environments. *See A.L.*, 900 F.3d at 1297-98.

### C.    Necessity Is A Fact-Based Determination Inappropriate For Summary Judgment

Under the ADA, "necessary" modifications are those that will provide a child with ASD "a like experience" to his or her peers. *See A.L.*, 900 F. 3d at 1294. The

determination as to whether an accommodation is necessary is an "inherently fact-intensive" analysis that "largely depends on context." *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 813 (9th Cir. 1999) (reversing summary judgment finding where disabled medical student necessarily required accommodation of more time was a question of fact); *Argenyi v. Creighton Univ.*, 703 F.3d 441, 451 (8th Cir. 2013). In making its analysis, the Court must consider what a non-disabled person experiences and whether the accommodation is necessary to give the disabled person the same experience. The non-disabled person has the emotional ability to plan, delay gratification, and understand that time continues and includes a sequence of future events. K.A.C. does not.

In its motion, Disney cites *PGA Tour, Inc.*, 532 U.S. 661 (2001) in arguing that Plaintiffs have the burden to show that it is "'beyond [K.A.C.'s] capacity to access the rides [] with the DAS system in place." [D.455-3 p.13] Disney cites no authority for this proposition that access to its attractions using the DAS without modification must be *impossible* for K.A.C. or "beyond his capacity", rather than unequal and thus discriminatory. The Ninth Circuit specifically rejected a similar prior effort by Disney to establish a strict interpretation of necessity. In *Baughman v. Walt Disney World Co.*, 685 F. 3d 1131, 1136-37 (9th Cir. 2012), the court considered Disney's opposition to mobility challenged guests' proposed use of Segways in the parks. Regarding Disney's argument that the plaintiff had not shown it was impossible for her to enjoy the parks without a Segway, the court stated:

> The district court held that Disney is not required to modify its policy because it permits motorized wheelchairs or scooters. Disney argues vigorously in support of the district court's judgment that "necessary" means only one thing: can't do without. Because Baughman *can* access Disneyland by using a wheelchair or scooter, a Segway isn't "necessary" for her to use the park.
>
> \* \* \* \*
>
> Read as Disney suggests, the ADA would require very few accommodations indeed. After all, a paraplegic *can* enter a courthouse

by dragging himself up the front steps, *see Tennessee v. Lane,* 541 U.S. 509, 513–14, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), so lifts and ramps would not be "necessary" under Disney's reading of the term. And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in, and we are disappointed to see such a retrograde position taken by a company whose reputation is built on service to the public.

*Baughman*, 685 F.3d at 1134–35. Ultimately, *Baughman* reversed the trial court's entry of summary judgment, finding that Disney is required to provide <u>*all*</u> of its disabled guests with a "like experience," not simply those for whom any experience at all is impossible or beyond their capacity. Disney sought to distinguish federal regulations indicating that Segways should be generally permissible. Addressing that claim, the court stated:

Disney simply takes the position that, even if Baughman's access is made "uncomfortable or difficult" by its policies, any discomfort or difficulty she may suffer is too darn bad. Disney is obviously mistaken. If it can make Baughman's experience less onerous and more akin to that enjoyed by its able-bodied patrons, it must take reasonable steps to do so.

\* \* \* \*

Disney scoffs at the regulation, claiming that it conflicts with [*PGA Tour v. Martin*]... According to Disney, the *Martin* Court held that a requested modification under Title III of the ADA isn't necessary, "even when access to the public accommodation may be 'uncomfortable or difficult' for the plaintiffs without it, so long as access is not '*beyond their capacity.* In such cases, an accommodation might be reasonable but not necessary.'"

But the issue presented in *Martin* was whether the requested modification—using a golf cart—fundamentally altered the nature of the PGA Tour, which required golfers to walk. *Martin*. The Court had no occasion to rule on whether the requested modification was necessary "[g]iven the concession by [the public accommodation] that

the modification sought [was] reasonable and necessary." *Martin* offers Disney no help, and Disney's other arguments that the regulation is invalid border on the absurd.

*Baughman*, 685 F.3d at 1136–37 (emphasis original; internal citations omitted), *quoting PGA Tour, Inc.,* 532 U.S. at 683, n.38, *citing Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.,* 339 F.3d 1126, 1133 (9th Cir. 2003) (explaining requirement that wheelchair-bound patrons sit in front rows of theater does not provide disabled patrons with "equal enjoyment").

J.L.C. and other parents of severely disabled children with ASD ask this Court for an opportunity to be heard on whether the DAS provides an experience more akin to that of able-bodied patrons, as required under *Baughman*.

This Court also should not disregard the decision reached in *A.L.*, 900 F.3d 1270, 1294 (11th Cir. 2018) (reversing thirty summary judgments entered by the Middle District of Florida on the basis that multiple questions of fact necessarily exist as to whether the behavioral symptoms of severe autism necessitated modifications to DAS).

Additional decisions establish that summary judgment is inappropriate on the issue of whether a requested modification is reasonable and necessary in order to provide a disabled guest with a "like experience" to his or her non-disabled peers. *See Wong*, 192 F.3d at 813 (reversing summary judgment where disabled medical student necessarily required accommodation of more time was a question of fact); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1085 (9th Cir. 2004) (affirming summary judgment for plaintiff on determination that the provision of a companion seat was necessary to provide a disabled guest a like experience). Similarly, other circuits' opinions support the requirement that a necessary modification is one that provides a disabled guest a like experience: *J.D. by Doherty v. Colonia Williamsburg Found.*, 925 F.3d 663, 672 (4th Cir. 2019) (proposed accommodation of having disabled child not eat at restaurant with parents could not provide a like

experience); *McGann v. Cinemark*, 873 F.3d 218, 223 (3d Cir. 2017) (vacating judgment upon ruling that tactile interpreters would be necessary for disabled patron to experience movie like a non-disabled guest); *Argenyi*, 703 F.3d at 451 (reversing summary judgment on finding genuine issue of material fact as to whether auxiliary aids were necessary to provide medical student like experience to non-disabled peers).

K.A.C. did not have a "like experience" to any disabled guest, at least not to any disabled guest who had a good time on the day of their visit. K.A.C. Stmt Facts ¶5, 8-12, 1.

**D. <u>Reasonableness Is A Fact-Based Determination Inappropriate For Summary Judgment</u>**

The ADA, and the Unruh Act by its incorporation of ADA, require Disney to implement "reasonable modifications" to its policies, practices and procedures when necessary to afford disabled individuals an equal opportunity and meaningful access to its accommodations. *See* § 12182(b)(2)(A). As with a "necessity" analysis, the Court must make an individualized inquiry of the circumstances in their totality to determine the "reasonableness" of a specific modification for an individual's disability under the circumstances. *See PGA Tour*, 532 U.S. at 688. The Court must weigh the effectiveness or feasibility of the proposed modification, and whether it would impose undue costs or administrative burdens on Disney.

The Ninth Circuit has held, consistent with other jurisdictions, that whether a plaintiff's requested modification is "reasonable" is a question of fact. *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (reversing summary judgment on the basis that whether a plaintiff's proposed modification is reasonable is a question of fact which precludes summary judgment). As the court stated in *Fortyune*, 364 F.3d at 1083:

Although neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d Cir.1995); *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 818 (9th Cir.1999) (stating that "the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might [be necessary to ensure his ability to enjoy a public accommodation]").

*Fortyune*, 364 F.3d at 1083. *Accord, Wong*, 192 F.3d at 821 (reasonable modification is a question of fact); *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1085-86 (11th Cir. 2007) (ADA reasonable modification analysis is "a highly fact-specific inquiry"); *Staron v. McDonald's Corp.* 51 F.3d 353, 356 (2d Cir. 1995); *Easley v. Snider,* 36 F.3d 297, 305 (3d Cir. 1994); *Haschmann v. Time Warner Entm't Co.,* 151 F.3d 591, 601 (7th Cir. 1998) ("The reasonableness of a requested accommodation is a question of fact").

The mere existence of the GAC program, the previously-provided accommodation program which allowed more immediate access to rides, creates a fact question about the reasonableness of certain of its features, and about whether future implementation of some of its features would create a fundamental alteration. *See Wong*, 192 F.3d at 820 (denying motion for summary judgment where evidence of previously granted accommodation raised question as to whether request was reasonable); *Redding v. Nova Southeastern Univ., Inc.*, 165 F.Supp.3d 1274, 1296 & n.25 (S.D. Fla. 2016) (denying summary judgment in part due to question of fact as to whether accommodation that had been previously requested and approved, was reasonable); *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1228 (S.D. Fla. 2010) (denying summary judgment due to question of reasonableness of

requested accommodation where school had provided accommodations in the past); *Matthews v. NCAA*, 179 F. Supp. 2d 1209, 1226 (E.D. Wash. 2001) (denying summary judgment where institution initiated and then withdrew accommodation reducing the number of credit hours student had to maintain).

K.A.C. requests that Disney's DAS be modified to relieve him of wait times that exceed about 10 to 15 minutes per attraction, because longer wait times are destabilizing for him. The modification could be achieved through different systemic approaches, such as: implementation of a simple maximum wait time; permitting alternate entry access, as was the case under GAC; or distribution of readmission passes permitting a limited number of alternate entry accesses. Each approach would be reasonable in that it would provide K.A.C. with equal opportunity and meaningful access to Disney's attractions. Disney argues that the requested accommodations for those with severe ASD are unreasonable even though it provided exactly these accommodations for many years prior to 2013, and even though the park frequently issues many readmission passes to guests.[4]

## E. FUNDAMENTAL ALTERATION IS A FACT-BASED DETERMINATION INAPPROPRIATE FOR SUMMARY JUDGMENT

Section 12182(b)(2)(A)(ii)-(iii) relieves a public accommodation such as Disney of its obligation to make reasonable modifications if such modifications will "fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations", i.e., alter the nature of the good or service such that it would be unacceptable even if it treated all guests equally or by providing a disabled guest an advantages other non-disabled guests. Disney bears the burden of

---

[4] For more than a half-dozen years of this litigation, Disney has repeatedly characterized Plaintiff's requested modification as one seeking "immediate and unrestricted" access. Disney continues to do so here. *See* Doc. 455-3, at 18. Disney's repetition of this falsehood is befuddling. Plaintiffs do not, and have *never*, sought immediate and unrestricted access.

proof on the fundamental alteration defense. *See Fortyune*, 364 F.3d at 1082, *citing PGA Tour,* 532 U.S. at 688.

As is true of the reasonable modification analysis, the determination of whether the modification requested by a person with a disability would require a defendant to fundamentally alter its business or services is a highly fact-specific inquiry inappropriate for determination by summary judgment. *See Crowder*, 81 F.3d at 1485 (state imposed 120-day quarantine requirement for incoming dogs, to prevent spread of rabies; summary judgment reversed due to questions of fact as to whether waiver for guide dogs would fundamentally alter the state's program); *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999) (reversing summary judgment where fact question existed as to whether requested accommodation fundamentally changed scheduling system); *Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir. 2003).

In the context of Disney's DAS, the Eleventh Circuit applied the United States Supreme Court's decision as follows:

> For a Title III public accommodation claim such as A.L.'s *"an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and at the same time not work a fundamental alteration"* to the defendant's business. *See [PGA Tour v.] Martin*, 532 U.S. 661, 688, 121 S.Ct. 1879, 1896. The statutory text of § 12182(b)(2)(A)(ii) contemplates three distinct inquiries for determining whether a requested modification to a public accommodation's procedures is required: (1) whether the requested modification is "reasonable"; (2) whether the requested modification is "necessary" for the disabled individual; and (3) whether the requested modification would "fundamentally alter the nature" of the public accommodation.

*A.L.*, 900 F.3d at 1293, *quoting PGA Tour*, 532 U.S. at 683 n.38 (emphasis added). Only one reading of the quoted *PGA Tour* language can exist: an "individualized inquiry" is to be applied to the necessary and reasonable modification issue, and to

the fundamental alteration issue "*at the same time*." Disney's proposition that one disabled person's adjudication of the fundamental alteration question necessarily adjudicates the question for all disabled persons defies logic.

In *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997), widely cited as to ADA burdens of proof, the Fifth Circuit noted that once a disabled plaintiff shows he or she requested a reasonable modification:

> …the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested modification would fundamentally alter the nature of the public accommodation. The type of evidence that satisfies this burden focuses on the specifics of the plaintiff's or defendant's circumstances and not on the general nature of the accommodation. Under the statutory framework, such evidence is relevant only to a fundamental alteration defense and not relevant to the plaintiff's burden to show that the requested modification is reasonable in the run of cases.

*Johnson*, 116 F.3d at 1059-60   Applying *Johnson*, Disney cannot establish its fundamental alteration defense by simply standing on assertions of a company-wide impact flowing from the requested modification; Disney must instead focus on the "specifics of [Plaintiff's] circumstances."

Disney argues that the requested modification – shorter wait times, readmission passes, or access to Fastpass lines – would fundamentally alter the nature of the services Disney provides to all of its guests on the premise that it would cause longer wait times for the majority of guests. The argument is routinely based on "wait time reports" that Disney generates that are skewed to provide Disney's desired results. While Disney's wait time reports appear on their face to be objective data compilations, they are nothing of the sort. They are manipulations of selective data that Disney skews to provide its desired results. Plaintiffs' objections to Disney's wait time reports are outlined in the Opposition to Motion for Summary

Judgment filed by Co-Plaintiff M.Y.R., filed contemporaneously with this opposition. Plaintiffs join in the M.Y.R. opposition.

The argument also ignores the fact that Disney has continued to broaden access to its Fastpass lines for all guests, thereby reducing disabled guests' ability to make reservations under DAS and *increasing* their wait times. This alone creates a question of fact about Disney's so-called "fundamental alternation," precluding summary judgment.

To the extent Disney attempts to compare the cost of accommodating Plaintiff (evidence of which Disney has never offered) to any company-wide cost or impact (which Disney has never quantified), Disney fails to offer the initial baseline information that would be necessary for a cost comparison. The failure to do so prevents any comparison. *See Pierce v. Cty. of Orange*, 761 F. Supp. 2d 915, 953 (C.D. Cal. 2011) (defendant which failed to offer evidence of overall budget impact of requested accommodation failed to carry burden as to fundamental alteration).

### F. K.A.C.'s necessary modification is not the same as A.L.'s or Galvan's, nor is the extent to which it might alter Disney's business

#### 1. K.A.C.'s disability differs from A.L.'s and Galvan's

While persons with challenges and cognitive impairments associated with autism have many common traits, many courts and analysts have emphasized the wide variety of severities, dysfunctions, and disabilities that befall individuals on the autism spectrum. See the authorities cited at Section V.A. of this opposition, *supra*.

### 2.    <u>All parks are not the same</u>

The Disney parks vary widely in their makeup. While Magic Kingdom in Florida averages 55,000 guests per day, other parks average less than half this figure. *A.L. v. Disney*, 2020 WL 3415006, at *6. Disneyland has 34 rides, more than any other park, while three parks (Epcot, Hollywood Studios, and Animal Kingdom) have less than 10 rides each. Animal Kingdom and Epcot have the most non-ride attractions (38 and 29, respectively), with Magic Kingdom and Disneyland having far fewer (19 each). See Opposition of M.Y.R. to summary judgment, filed contemporaneously with this opposition.

Given the wide differences that exist between the parks, a guest's requested modification will necessarily impact each park differently.

### 3.    <u>K.A.C.'s modification necessarily creates a different impact on Disney's systems</u>

As described in *A.L. v. Disney*, A.L. lives in the Orlando area and has visited the Disney parks quite frequently over his entire life. *A.L. v. Disney*, 2010 WL 3415008, *22. In contrast, K.A.C. lives in the Dallas, Texas metropolitan area. For him, the Disney parks are much more of a vacation destination, and he has visited the Disney parks only three times – twice in 2014 and once in 2016. The conclusion is inescapable that accommodating his very occasional visits would create much less burden on Disney's systems than would be true for someone like A.L.

Two of K.A.C.'s three post-DAS visits occurred at off-peak times of year – a Monday to Thursday period during mid-March 2014, and a Tuesday to Thursday period during May 2016. K.A.C. Stmt Facts ¶5, 14. Surely K.A.C.'s propensity to visit the parks at off-peak times of year must factor into the extent to which his requested modification will alter Disney's business.

**G.  IN RELATION TO INJUNCTIVE RELIEF, THE COURT MUST EVALUATE THE IMPACT OF PLAINTIFF'S REQUESTED MODIFICATION TODAY, AND IN THE FUTURE, NOT SOLELY IN THE PAST**

Money damages sought under the Unruh Act and Plaintiffs' common law claims constitute redress for the wrongs that occurred during Plaintiffs' past visits to the parks, which injunctive relief under the Unruh Act, as under the ADA, can address only future, prospective discrimination to which a plaintiff is vulnerable. *See Rueda Vidal v. U.S. Dep't of Homeland Sec.*, 2019 WL 7899948, *11 (C.D. Cal. 2019), rev'd on other grounds, 822 F.App'x 643 (9th Cir. 2020), citing *McKinnon v. Talladega County,* 745 F.2d 1360, 1362 (11th Cir. 1984) ("unlike declaratory and injunctive relief, which are prospective remedies, awards for monetary damages compensate the claimant for alleged past wrongs").

Because an injunction looks only to the future, a Court can err by refusing to modify an injunction as conditions change, or as the future becomes the present. See *California by & through Becerra v. U.S. EPA*, 2020 WL 6193497, at *7 (9th Cir. Oct. 22, 2020) (district court erred by failing to modify injunction in light of change in law); *Flores v. Huppenthal*, 789 F.3d 994, 1001 (9th Cir. 2015) ("A court abuses its discretion when it refuses to modify an injunction or consent decree in light of "a significant change either in factual conditions or in law"), quoting *Horne v. Flores,* 557 U.S. 433, 447 (2009). Continuing injunctive relief is based upon "present circumstances, not past conditions." *Pierce v. Cty. of Orange*, 2014 WL 12884512, *2 (C.D. Cal. 2014).

In performing the individualized assessments necessary for each disabled guest, one assessment, even as to a single guest, cannot be considered static or unchangeable. Changes are destined to occur in the makeup of Disney's parks, and Disney's guests, that will require constant re-evaluation of any prior assessment. In other words, because whatever may have been the past experiences of A.L. and

Galvan in the parks, those past experiences shed little light on what may occur for K.A.C. today, or in the future.

For example, technology will undoubtedly continue to evolve. Disney's ability to accommodate individual guests' needs without creating a fundamental alteration of its systems will change as its ability to track and manage crowds evolves. Disney may be able to accommodate particular guests' needs by advising them of particular dates and times that they might choose to visit the parks to avoid destabilizing wait times.[5] That is, Disney "must also take into account evolving technology that might make it cheaper and easier to ameliorate the plight of the disabled." *Baughman*, 685 F.3d at 1135.

Similarly, unforeseen outside forces might change the vacation landscape. For example, none of the evidence presented by Disney regarding park attendance and wait times is presently valid, in light of societal and systemic changes relating to COVID-19. There can be no logical basis for assuming that a burden that might presently be imposed upon Disney is the same in our COVID-19 world as was the case when A.L. or Galvan visited the parks, or when *A.L. v. Disney* was tried in February 2020. Disney's own evidence establishes that when crowds are lower, wait times are shorter. It is wildly speculative to assume that a fundamental alteration analysis that might have applied to the facts as they existed during the *A.L. v. Disney* trial has any bearing on an analysis to be performed today, or in the future. *See Roman v. Wolf*, 2020 WL 6040125, *7 (9th Cir. Oct. 13, 2020) (prospective injunction entered in April 2020 vacated due to rapidly evolving COVID-19 conditions).

### H.    WAIT TIMES ARE "PERIPHERAL" TO THE SERVICES OFFERED

*PGA Tour v. Martin* involved a professional golfer who requested relief from the PGA Tour's requirement that all tournament players walk the course. The Court

---

[5] Plaintiffs do not concede that Disney is incapable of doing this now.

characterized the walking requirement as "peripheral" to the event itself, ruling:

> [T]he waiver of an essential rule of competition for anyone would fundamentally alter the nature of petitioner's tournaments. As we have demonstrated, however, the walking rule is at best peripheral to the nature of petitioner's athletic events, and thus it might be waived in individual cases without working a fundamental alteration…
>
> * * * *
>
> Under the ADA's basic requirement that the need of a disabled person be evaluated on an individual basis, we have no doubt that allowing Martin to use a golf cart would not fundamentally alter the nature of petitioner's tournaments. As we have discussed, the purpose of the walking rule is to subject players to fatigue, which in turn may influence the outcome of tournaments… The purpose of the walking rule is therefore not compromised in the slightest by allowing Martin to use a cart. A modification that provides an exception to a peripheral tournament rule without impairing its purpose cannot be said to "fundamentally alter" the tournament.

*PGA Tour, Inc.*, 532 U.S. at 688–90.

Just as walking in a golf tournament was peripheral to the event in *PGA Tour v. Martin*, wait times are at best peripheral to the "event" at the Disney parks – the rides and attractions. Relief from wait times is materially indistinguishable from relief from walking. Disney cannot possibly propose that wait times are a desired or fundamental part of the park experience, so that someone might suffer by missing out on them.

The same concept existed in *Baughman, supra*, in which the Ninth Circuit considered Disney's opposition to mobility challenged guests' proposed use of Segways in the parks. To Disney's dismay, those guests would have been relieved of the burden of walking from one attraction to the next, just as Casey Martin was relieved of the burden of walking from one golf hole to the next. Put simply, Disney guests seek the experience *of the ride*, not the experience *of waiting for it*. Waiting for a ride is clearly "peripheral" to the ride itself.

The Court should also note *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003), in which the Ninth Circuit considered *PGA Tour v. Martin*, describing the case as "holding, in an ADA reasonable accommodation case, that where a rule is peripheral to the nature of defendants' activities, "it may be waived in individual cases without working a fundamental alteration". *Giebeler*, 343 F.3d at 1157, *quoting PGA Tour*, 532 U.S. at 689.

## I.   EACH OF PLAINTIFFS' STATE LAW CLAIMS REQUIRES A FACT-BASED DETERMINATION INAPPROPRIATE FOR SUMMARY JUDGMENT

### 1. Unruh Act

The failure to recover under ADA does not preclude recovery under the Unruh Act. *Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F. Supp. 2d 923, 929 (E.D. Cal. 2004) (failure to obtain injunctive relief under ADA does not preclude recovery under the Unruh Act); *Lema v. Comfort Inn*, 2013 WL 1345510, *10 (E.D. Cal. 2013) (money damages under the Unruh Act are appropriate even in the absence of injunctive relief under ADA); *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1069 (E.D. Cal. 2006) ("[T]he court concludes that the issue is moot for the purposes of the ADA. However, the claim is not moot under the Unruh Act, since damages are still available"); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (statutory damages under the Unruh Act are appropriate even though injunctive relief under ADA is moot).

"'[T]o establish a violation of the Unruh Act independent of a claim under the [ADA]… a party must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.'" *DeSalvo v. Islands Restaurants, L.P.*, 2020 WL 4035071, *6 (C.D. Cal. July 16, 2020), *quoting Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014), *quoting Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (Cal. 2009). *Accord*, *Goldsmith v. CVS Pharmacy, Inc.*, 2020 WL 3966004, *4 (C.D. Cal.

May 5, 2020); *Castillo v. Lundt & Sprungli USA Inc.*, 2019 WL 6910354, *1 (C.D. Cal. 2019).

The Complaint is replete with allegations of intentional discrimination. See Complaint [Doc. 1-1] ¶¶ 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 42, 64, 65, 66, 79, 80, 86, 87, 88, 89, 90.

In addition, the evidence is overwhelming that new its DAS would have a discriminatory impact, and Disney rolled it out anyway. Such evidence is outlined in the Opposition to Motion for Summary Judgment filed by Co-Plaintiff M.Y.R., filed contemporaneously with this opposition. Plaintiffs join in the M.Y.R. opposition.

2. <u>Common law claims</u>

Plaintiffs' common law causes of action must survive Disney's motion because factual issues exist that must be reconciled at trial.

Causation is a fact-based determination that ordinarily prevents summary adjudication. *See Mandeville v. Onoda Cement Co.*, 67 F. App'x 417, 420 (9th Cir. 2003) (summary judgment as to causation in negligence infliction of emotional distress improper), *Vickers v. United States*, 228 F.3d 944, 953-56 (9th Cir. 2000). The facts indicate that K.A.C. and J.L.C. felt distressed as a direct and proximate result of Disney's discriminatory actions.

Countless cases establish that, under California law, proof of a breach of statutory duty can escalate a tort claim rather than undermine it, because proof of the statutory breach gives rise to negligence per se and an associated jury instruction. *See, e.g.*, *Spriesterbach v. Holland*, 155 Cal. Rptr. 3d 306 (Cal. App. 2013); *Ramirez v. Plough, Inc.*, 863 P.2d 167 (Cal. 1993); *Casey v. Russell*, 188 Cal. Rptr. 18 (Cal. App. 1982); *Galvez v. Frields*, 107 Cal. Rptr. 2d 50 (Cal. App.2001); *Vollaro v. Lispi*, 168 Cal. Rptr. 3d 323, n.7 (Cal. App. 2014). Likewise, while statutory violations can exist as part of claims for negligent and intentional infliction of emotional distress, the tort claims properly stand alone, independent of

any statutory violation. *See, e.g.*, *Paletz v. Adaya*, 2014 WL 7402324 (Cal. App. 2014); *Alcaraz v. United States*, 2013 WL 4647560, *6 (N.D. Cal. 2013); *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 213, 7 Cal. Rptr. 3d 597, 601 (Cal. App. 2003).

Similarly, a willful and knowing violation of accessibility statutes gives rise to a claim for punitive damages. *See Uhls v. OfficeMax, Inc.*, 2002 WL 33928620, *1 (E.D. Cal. 2002); *Saylor v. Zeenat, Inc.*, 2002 WL 33928621, *1 (E.D. Cal. Dec. 24, 2002); *Agarwal v. Johnson*, 603 P.2d 58, 72 (1979) *disapp. on other grounds*, *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 981 P.2d 944 (1999). The evidence offered by Plaintiffs regarding Disney's intentional conduct will be admissible as to all claims.

Disney's suggestion that medical opinion testimony as to causation is always necessary is unsound. Causation for emotional distress requires an assessment of all possible facts and inferences. *See Holmes v. Home Depot USA, Inc.*, 2008 WL 4966098, *17 (E.D. Cal. 2008) (requirement to consider all possible inferences prevents summary judgment based upon lack of express medical testimony as to causation), citing *Tortorella v. Castro,* 140 Cal. App. 4th 1, 10–11, 43 Cal.Rptr.3d 853 (2006), *Townsend*, 328 F.3d at 520 (specific expert testimony as to medical causation unnecessary where injury and harm were self-evident). *Accord*, *City of Los Angeles v. Superior Court*, 2006 WL 1868500, *1 (Cal. App. 2006); *Hernandez v. Amcord, Inc.,* 156 Cal. Rptr. 3d 90, 101 (Cal. App. 2013) ("We disagree with the trial court's view that… a medical doctor must expressly link together the evidence of substantial factor causation").[6]

---

[6] Disney's reliance upon *McElroy v. Pac. Autism Ctr. For Educ.*, 2016 WL 3029782 (N.D. Cal. 2016) is misplaced. The *McElroy* plaintiff asserted that an institution's under-treatment of him over an extended period of time caused a generalized and gradual worsening of his disorder. In contrast, Plaintiffs' claims relate to singular events, with no potential for causation speculation. Also, Plaintiffs do not assert that Disney caused or permanently worsened K.A.C.'s condition.

Disney asks the Court to conclude that no evidence of intent exists, and that Disney's conduct cannot conceivably be extreme and outrageous. But intent is an impossibly fact-bound determination which is inappropriate for determination at this stage.

> Summary judgment almost certainly is inappropriate in a case such as this where intent is at issue. "In many constitutional and civil rights cases, a necessary element of the claim for relief presents an inquiry into the state of mind of one or more of the parties. [C]laims requiring a determination regarding intentions or motives are particularly unsuitable for summary adjudication."

*Hopper v. City of Pasco*, 241 F.3d 1067, 1091 (9th Cir. 2001), *quoting* Wright, Miller & Kane, *Federal Practice and Procedure, Civil* 2d § 2732.2 (1998). *See also In re Software Toolworks Inc.*, 50 F.3d 615, 627-28 (9th Cir. 1994) (summary judgment on securities claim improper, even absent direct evidence of fraudulent intent, where evidence permitted inference of intent); *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 848 (9th Cir. 2004) (in contract case, "summary judgment is ordinarily improper because 'differing views of the intent of parties will raise genuine issues of material fact'"), *quoting San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997); *Mut. Fund Inv'rs, Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 624 (9th Cir. 1977) ("Generally, when intent It issue, a jury should be allowed to draw its own inferences from the undisputed facts unless all reasonable inferences defeat Plaintiffs' claims").

Plaintiff has placed into this record an enormous volume of evidence of direct proof of intentional discrimination, and will present far more at trial. Disney's request that the Court ignore all this evidence should be denied.

## VI. **CONCLUSION**

Plaintiffs must be given the opportunity to present to a fact-finder their evidence that the DAS does not reasonably accommodates Plaintiff K.A.C.'s special need. Disney's motion for summary judgment must be denied

1
2   Dated:  November 2, 2020          **DOGALI LAW GROUP, P.A.**
3                                     /s/ *Andy Dogali*
4                                     Andy Dogali, Esq.
5                                     Admitted *pro hac vice*
                                      Fla. Bar No.: 0615862
6                                     Barbara U. Uberoi, Esq.
7                                     Cal. Bar No. 208389
                                      19321 U.S. Hwy. 19 N., Suite 307
8                                     Clearwater, FL 33764
9                                     (813) 289-0700
                                      adogali@dogalilaw.com
10                                    buberoi@dogalilaw.com
11
                                      Jennifer A. Lenze, Esq.
12                                    CA Bar No.: 246858
13                                    jlenze@lenzelawyers.com
                                      Amanda D. McGee, Esq.
14                                    CA Bar No.: 282034
15                                    mcgee@lenzelawyers.com
                                      Lenze Lawyers, PLC
16                                    1300 Highland Ave. Suite 207
17                                    Manhattan Beach, CA 90266
                                      (310) 322-8800
18
19                                    Eugene Feldman, Esq.
20                                    CA Bar No. 118497
                                      Arias, Sanguinetti,
21                                    Wang & Torrijos, LLP
22                                    6701 Center Drive West, Suite 1400
                                      Los Angeles, CA  90045
23                                    (310) 844-9696
24                                    eugene@aswtlawyers.com
25
                                      *Attorneys for Plaintiffs*
26
27
28

## VII. CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed and served on all counsel of record by way of the Court's CM/ECF filing system this 2nd day of November 2020.

/s/ *Andy Dogali*
Andy Dogali