**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Exhibit 1-CC

Evidence Packet in Support of Defendant's Motions for Summary Judgment

U.S.D.C., Central District of California, Case No.: 2:15-cv-05346-CJC-E

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Page 1

```
               UNITED STATES DISTRICT COURT FOR THE
                   CENTRAL DISTRICT OF CALIFORNIA


   T.P., et al                    )   Case No. 15-cv-5346-R
                                  )
   VS.                            )
                                  )
   WALT DISNEY PARKS AND          )
   RESORTS U.S., INC.             )


          *********************************************
                         ORAL DEPOSITION
                       CARISSA MEYER, M.D.
                        DECEMBER 17, 2019
                           VOLUME I
          *********************************************
```

ORAL DEPOSITION of CARISSA MEYER, M.D., produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on the 17th day of December, 2019, from 2:17 p.m. to 4:55 p.m., before Rhonda K. Ashman, CSR, RPR, in and for the State of Texas, reported by stenographic means, at the offices of McDermott, Will & Emery, LLP, 2501 North Harwood Street, Suite 1900, Dallas, Texas, pursuant to the Rules of Civil Procedure and the provisions stated on the record or attached hereto.

800.275.7991    Orange Legal    www.veritext.com
A Veritext Company

Exhibit 1CC
White Decl. ISO Disney's SJ Motion P.0571

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Page 2

```
 1              A P P E A R A N C E S
 2   FOR THE PLAINTIFFS:
 3       Mr. Domenick Lazzara, Esq.
         DOM LAW, PA
 4       1814 North 15th Street
         Ybor City, Florida  33605
 5       Phone (813) 606-5036
         Fax (813) 606-5336
 6       Dom@domlaw.com
 7   FOR THE DEFENDANT:
 8       Mr. Jeremy M. White, Esq.
         Ms. Sarah Schanz, Esq.
 9       McDERMOTT, WILL & EMERY, LLP
         The McDermott Building
10       500 North Capitol Street, NW
         Washington, DC  20001-1531
11       Phone (202) 756-8694
         Fax (202) 591-2799
12       Jmwhite@mwe.com
13   ALSO PRESENT:
         Zachary Steinmetz, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

800.275.7991  Orange Legal  www.veritext.com
A Veritext Company

Exhibit 1CC
White Decl. ISO Disney's SJ Motion P.0572

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Page 7

1   CARISSA MEYER, M.D.,
2   having been first duly sworn, testified as follows:
3                    E X A M I N A T I O N
4   BY MR. LAZZARA:
5        Q.   Okay.  Good afternoon.  How are you?
6        A.   I'm good.  Thank you.
7        Q.   Good.  Thank you.  Have you taken any depositions
8   before?  Had your deposition taken?
9        A.   No.
10       Q.   So this is your first time?
11       A.   Yes.
12       Q.   Okay.  I would like to just briefly go through some
13  ground rules with you and set the predicate for the next hour
14  or so together.
15            So we have a court reporter here.  That's the
16  first part of this.  And the court reporter is taking a record
17  of everything that you say.  So throughout the deposition, it's
18  very important that if you answer questions, you answer with
19  either "yes" or "no" and try to avoid inaudible gestures and
20  head shakes or head nods or saying "uh-huh" or "huh-uh" because
21  it's difficult for the madam court reporter to keep an accurate
22  record.
23            Throughout this deposition, opposing counsel,
24  Mr. White, may state objections in the nature of he'll say
25  something, like, objection, form or a speaking objection.  It

Page 19

1     Q.   Such as?

2     A.   By gesture, by noise. He can make noises. It's just
3 not words. And by his actions, what he does.

4     Q.   Can you give me a specific example, things that are
5 specific to Kendall? For example, something that he's
6 communicated to you by gesture and what the translation would
7 be?

8     A.   I mean, I would say when he comes to the office, you
9 know, he communicates he does not want to be there by -- or
10 feels nervous or anxious by, again, not wanting to sit down,
11 then wanting to stand up, fidgeting, pushing towards the door,
12 those sorts of behaviors.

13     Q.   Okay. What about the opposite, that he's enjoying
14 his time or enjoying his experience, how do you know -- how do
15 you know that?

16     A.   That, you can tell just by the look on his face
17 because when we examine him, we try to give him lots of praise.
18 So if we say good job, then, you know, pat him, then he seems
19 happy, kind of smiles.

20     Q.   When Kendall comes in for a visit with you,
21 approximately how long does he have to wait in the waiting
22 room?

23     A.   It really varies. It could be a long time, like,
24 30 minutes.

25     Q.   Do you offer something in your waiting room for

```
                                                          Page 40
 1      Q.   That's okay.  If you're not sure, I would prefer --
 2   let's just leave it at that then.
 3           So then back to my last question:  Are there any
 4   other doctors that you have been -- that you see a lot of
 5   records of that ring a bell in this case?
 6      A.   No.
 7      Q.   Okay.  What about Dr. -- I don't know how to say his
 8   name -- Dr. Tran, the last -- doctor from the last deposition?
 9   Forgive me.  Dr. Quoc-Hung Tran.  That's it.
10      A.   Yeah, he was the psychiatrist that --
11      Q.   Oh, that's the same.
12      A.   Yeah.
13      Q.   Oh, so he was the psychiatrist before Dr. Elliott?
14      A.   (Moving head up and down.)
15      Q.   That makes sense.  Okay.
16           Have there ever been any discussions with you
17   about their trips to Walt Disney World?
18      A.   No.
19      Q.   No?  Nothing?
20      A.   No.
21      Q.   Are you familiar with Maria Calderas?
22      A.   No.
23      Q.   Are you aware of any genetic treatment that Kendall
24   has undergone or geneticists?
25      A.   I know he's had genetic testing.  I don't believe it
```

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Page 45

1    Q.   You mentioned that you have been seeing him, you
2    believe, for three years.  I know you practiced with
3    Dr. Viktorin prior to that, but you believe you have seen him
4    for about three years?
5    A.   I saw him for at least the past three years at my new
6    office, and then I -- she left the practice, the previous
7    practice, and so then I became his primary person after that.
8    And I don't recall when she left.  It may have been 2015.  I'm
9    not sure.
10   Q.   So maybe approximately four years you've --
11   A.   I mean, I knew of him before that.  In most offices,
12   there are certain patients that everybody knows of them just
13   because they're -- have more chronic issues, and he -- I would
14   consider him to be a patient like that; that everybody kind of
15   knows about him.
16   Q.   Sure.  And you see him -- unless he comes in for a
17   sick visit -- approximately you said once a year for a well
18   visit?
19   A.   In the past two years, that's been the case.  I've
20   only seen him for well visits.  But prior to that, I saw him
21   for sick visits at the old office.
22   Q.   And when you see him for a well visit, how long do
23   you see him for?
24   A.   Usually probably, like, 20 to 30 minutes.
25   Q.   What about a sick visit, how long does a sick visit

800.275.7991    Orange Legal    www.veritext.com
A Veritext Company

Exhibit 1CC
White Decl. ISO Disney's SJ Motion P.0576

Page 46

```
1   usually take?
2       A.   It usually takes about the same amount of time for
3   him.
4       Q.   In the past three or four years that you have seen
5   him, do you think you have seen him more than ten times?
6       A.   In the past three or four years?  No, not more than
7   ten.
8       Q.   Not more than ten?
9       A.   Yeah.
10      Q.   So since you have been treating him or seeing
11  Kendall Campbell, you have seen him less than ten times; is
12  that right?
13      A.   I don't know.  I would have to go back to the very
14  first time I saw him in the office and then calculate all of
15  those visits, and I'm not sure what those would be.
16      Q.   But you don't think it's more than ten?
17      A.   Are you saying in the past -- you're saying the past
18  three years only?
19      Q.   Three to four years.
20      A.   In the past three years, I know it's been less than
21  ten in the past three years.
22      Q.   And you mentioned that the mother, Julia Campbell,
23  called you to let you know what was going on; that you were
24  going to be subpoenaed or you received a subpoena?
25      A.   After I had already received it, yes, she called me.
```

Page 65

1  and treat those aggressive behaviors.
2      Q.   Thank you, Doctor.
3           MR. LAZZARA:  I don't have any further
4  questions.  I appreciate your time.
5           Counsel, you may have follow-up, but I am
6  officially done.
7           Thank you, Doctor.
8           THE WITNESS:  Thank you.
9           (Reporter's time:  4:54 p.m.)
10                   FURTHER EXAMINATION
11 BY MR. WHITE:
12     Q.   Do you provide any accommodations to patients with
13 autism who are waiting in your waiting room at the doctor's
14 office?
15          MR. LAZZARA:  Objection, form.
16     A.   No.  I would say no.
17          MR. WHITE:  Okay.  No further questions.
18          THE WITNESS:  Okay.
19          MR. LAZZARA:  Thank you, Doctor.
20          (Proceedings concluded at 4:55 p.m.)
21
22
23
24
25

Page 68

1  STATE OF TEXAS   )

2       I, Rhonda K. Ashman, Certified Shorthand Reporter in and

3  for the State of Texas, do hereby certify that, pursuant to the

4  agreement hereinbefore set forth, there came before me on the

5  17th day of December, A.D., 2019 at 2:17 p.m., at McDermott,

6  Will & Emery, LLP, 2501 North Harwood Street, Suite 1900, in

7  the City of Dallas, County of Dallas, and State of Texas, the

8  following named person to-wit: CARISSA MEYER, M.D., who was by

9  me duly sworn to testify the truth and nothing but the truth of

10 her knowledge touching and concerning the matters in

11 controversy in this cause; and that she was thereupon carefully

12 examined upon her oath and her examination reduced to writing

13 under my supervision; that the deposition is a true record of

14 the testimony given by the witness, same to be sworn to and

15 subscribed by said witness before any Notary Public, pursuant

16 to the agreement of the parties; and that the amount of time

17 used by each party at the deposition is as follows:

18      Mr. Domenick Lazzara - 1:09
        Mr. Jeremy M. White - 00:25

19

20      I further certify that I am neither attorney or counsel

21 for, nor related to or employed by, any of the parties to the

22 action in which this deposition is taken, and further that I am

23 not a relative or employee of any attorney or counsel by the

24 parties hereto, or financially interested in the action.

25      I further certify that before the completion of the

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Page 69

1  deposition, the Deponent _____, and/or the
2  Plaintiff/Defendant did request to review the transcript.
3      Certified to by me this _____ day of
4  _____, A.D., 2020.

*Rhonda K. Ashman*
_____
RHONDA K. ASHMAN, RPR, Texas CSR 5259
Expiration Date: 10-31-22
VERITEXT LEGAL SOLUTIONS
Veritext Registration No. 571
300 Throckmorton, Suite 1600
Fort Worth, Texas 76102
(817) 336-3042   (800) 336-4000

Job No. 3820893