**UNITED STATES DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| T.P., et al., | ) |
|     Plaintiffs, | ) Case No.: 15-cv-5346-CJC-E |
|     v. | ) |
| WALT DISNEY PARKS AND RESORTS U.S. INC., | ) Judge: Hon. Cormac J. Carney <br> ) Hearing Date: May 3, 2021 <br> ) Time: 1:30 p.m. <br> ) Courtroom: 9B |
|     Defendant. | ) |

**EVIDENCE IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

# Exhibit "41"

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**KAYE SCHOLER** LLP

Kerry Alan Scanlon
202.682.3660
kscanlon@kayescholer.com

The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
+1 202 682 3500 main
+1 202 414 0350 fax

March 19, 2015

**VIA E-MAIL**

Florida Commission on Human Relations
Attn: Jennifer Morrison
2009 Apalachee Parkway, Suite 100
Tallahassee, FL 32301

      Re:      ▇ v. Walt Disney Parks and Resorts U.S., Inc.
           FCHR No. 201500097

Dear Ms. Morrison:

    Attached please find the response of Walt Disney Parks and Resorts U.S., Inc. ("Disney") to the Information/Document Request issued by your office.[1] Disney would like to thank the Florida Commission on Human Relations ("Commission") for its grant of an extension to respond.

    These materials constitute Disney's position statement in response to the charge filed by ▇ on behalf of her daughter, ▇ Disney reserves the right to supplement its response and to respond to any additional allegations, including any rebuttal to this position statement.

    As part of our prior agreement, we will bring Disney Cast Members to the interview to provide case-specific information and to answer any questions you may have. We have also agreed to pay the cost of meeting at a local public library or other appropriate venue close to your office so that no expense is incurred by the Commission. Please let me know when you are ready to schedule this interview.

---

[1] Disney's position statement, along with any information and supporting documentation provided in the course of this proceeding, is strictly confidential and is not to be used for any reason other than the resolution of these charges, nor disclosed to any third party without Disney's prior written consent.

Chicago    Los Angeles    Shanghai
Frankfurt    New York    Washington, DC
London    Palo Alto    West Palm Beach

62634929

**Exhibit 41**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

I hope this information assists you in completing your investigation. Please do not hesitate to contact me directly at (202) 682-3660 if you have any questions.

Sincerely,

*[signature]*

Kerry Alan Scanlon
Counsel for Disney

62634929

**Exhibit 41**

## Information/Document Request

1. **What is the corporate legal name of your company or agency?**

   The corporate legal name of the Respondent is Walt Disney Parks and Resorts U.S., Inc. ("Disney").

2. **Describe your business operations or agency functions.**

   Disney owns and operates the Walt Disney World Resort ("WDW") in Florida and the Disneyland Resort in California.

3. **Submit a statement that thoroughly addresses your position regarding the events alleged by Complainant. Provide a direct response to each allegation as stated on the complaint. Include any additional information and explanation you consider relevant to the complaint.**

   On October 20, 2014, ███████ on behalf of her daughter, ███████ ("Complainant") filed a Public Accommodation Complaint of Discrimination against Disney with the Florida Commission on Human Relations ("FCHR" or "Commission"). This charge does not contain a single factual allegation to support a claim of discrimination. Instead, Complainant alleges in conclusory fashion that Disney discriminated against her daughter by replacing its Guest Assistance Card ("GAC") program with the Disability Access Service ("DAS") card program. Not only is Complainant's claim completely unsupported, but her own allegations actually support Disney's position that her daughter was afforded access to Disney's parks. As further shown below, the complaint is without merit and should be dismissed.

   There is no reason to believe that any violation of Florida law has occurred in this case. As a company long committed to civil rights, diversity and accessibility, Disney strongly denies that it violated any applicable laws, codes or regulations, or that it discriminated against complainants in any way on account of their disability. The company has gone to great lengths to provide unparalleled service to all guests, including those with disabilities, and especially prides itself on the levels of accessibility throughout its facilities. Disney not only makes every effort to accommodate its guests with disabilities, but takes an active interest in designing, promoting, and serving as a model for accessibility.

   Disney has also established a dedicated department known as Services for Guests with Disabilities to assist guests with disabilities and their families. The Services for Guests with Disabilities Department provides a full array of services ranging from guidebooks that assist guests with disabilities to policies and procedures that enhance their experiences at the various theme parks and resorts. For example, Disney developed and implemented a *Guide for Guests with Disabilities* and a *Guide for Guests with Cognitive Disabilities*. These guides explain and delineate services and accessible features at Disney's theme parks. A copy of the two guides is included as Exhibits 1 and 2.

**Exhibit 41**

On October 9, 2013, Disney replaced its GAC program with the DAS card program. The new DAS card was primarily designed to accommodate guests who are not able to wait in a conventional queue environment due to a disability. Specifically, it allows these guests to wait "virtually," and return to an attraction at the posted wait time minus ten minutes. During this time, guests may visit other rides or attractions (with little or no wait times) or otherwise experience the park. Complainant preferred the GAC program because, while Disney was not legally required to do so, it generally provided guests with disabilities and their families access to rides and attractions through alternative entrances, without them needing to wait in the standard ride or attraction lines or wait virtually and return to a ride or attraction at a specified time. However, the GAC program resulted in abuse and fraudulent misuse, which was widespread and continuing.

"Disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1333 n.5 (S.D. Fla. 2008); *see also Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) (applying an ADA analysis to address plaintiff's claims under the Florida Civil Rights Act).[2] Therefore, in order to prevail on her charge, Complainant must show that a reasonable modification of Disney's policy is necessary to afford her daughter access, unless doing so would fundamentally alter what is offered at Disney's theme parks. *See* 42 U.S.C. § 12182(2)(A)(ii); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001). The Supreme Court in *Martin* went out of its way to clearly define what Congress meant by "necessary" in the context of a reasonable modification claim under Title III of the ADA. In *Martin*, the Supreme Court explained that a requested modification is not "necessary" even if the plaintiff finds it "uncomfortable" or "difficult" without the modification, so long as access by other means is not "beyond [his] capacity." 532 U.S. at 682. "Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1286 (11th Cir. 1997).

Complainant does not even attempt to meet this standard, and cannot do so. In fact, in response to the Commission's questions, Complainant explains that GAC was "much easier to handle" and that the Parks were "much more enjoyable because I didn't have to be a full-time planner and juggler." These allegations demonstrate that she *preferred* GAC over DAS for her daughter because she believed it required less pre-planning. *See also* Complainant's Answer No. 5 ("Scheduling on the magic bands needs about a week in advance. Sometimes we just don't have that kind of planning."). Based on well-established legal precedent, it is clear that Complainant's claim that DAS was not convenient does not meet her burden under Title III of the ADA and, in turn, does not constitute a violation of the FCRA. *See, e.g., Martin*, 532 U.S. at 682; *Ault v. Walt Disney World Co.*, 254 F.R.D. 680, 688 (M.D. Fla. 2009) (explaining

---

[2] In her charge, Complainant also appears to bring her claim under Fla. Stat. § 509.092. However, such allegations of disability discrimination are litigated under Section 760.11 of the Florida Civil Rights Act ("FCRA"). Therefore, the analysis under the Americans with Disabilities Act ("ADA") is similarly applicable.

**Exhibit 41**

that a preference to use a Segway over other types of mobility devices need not be accommodated under the ADA as a matter of law); *Dobard v. San Francisco Bay Area Rapid Transit Dist.*, 1993 U.S. Dist. LEXIS 13677, at **9-10 (N.D. Cal. Sept. 7, 1993) (finding that plaintiff failed to state a claim for an ADA violation because defendant was not required to provide the most advanced technology to those who are hearing-impaired as long as it allows for some means of ensuring effective communication).[3]

At no time did Complainant claim that her daughter could not access the parks without GAC or that GAC was "necessary" to afford her access to the parks. To the contrary, Complainant admitted that they visited Disney "approx. 10-11 times under the DAS." This admission is fatal to her claim because it shows that she cannot meet her burden of proving that the requested modification (i.e., reverting back to the GAC program) is necessary to afford her daughter access to the parks. It is also notable that Complainant and her daughter used the DAS system when they visited Magic Kingdom just eleven days ago on March 8, 2015, and there is no evidence of any issues involving their visit. If Complainant and her daughter were denied access to the parks, they certainly would not have kept coming back over and over again.

The ADA does not prohibit, or even discourage, accommodations that apply across-the-board, so long as they provide access to persons with disabilities. There are many examples of such "blanket accommodations." The grade of a wheelchair ramp applies to all wheelchair users, and therefore ramps with different gradients are not required simply because some persons using wheelchairs are weaker than others. Video captioning is available for all persons with hearing

---

[3] Other courts throughout the country have determined that a requested modification is not "necessary to afford access" to defendant's facilities if there are other available means of insuring access. *See, e.g., Coleman v. Phoenix Art Museum*, No. CV 08-1833-PHX-JAT, 2009 U.S. Dist. LEXIS 38905 (D. Ariz. Apr. 21, 2009) (citing *Martin*, holding that the plaintiff failed to meet his burden of showing that his own hip chair device was necessary to accommodate his disability when the museum offered to provide two different kinds of wheelchairs), *aff'd* 372 Fed. Appx. 793 (9th Cir. 2010); *Logan v. Am. Contract Bridge League*, No. 04-4428, 2006 U.S. App. LEXIS 5914, at **2 (3d Cir. Mar. 9, 2006) (affirming the district court's decision because although a special deck of playing cards enhanced the ability of a person with a vision impairment to play bridge, the requested modification was not necessary to afford access to games and tournaments in light of the alternative accommodations); *Murphy v. Bowl*, No. 04-35273, 2005 U.S. App. LEXIS 21788, at **5 (9th Cir. Oct. 5, 2005) (citing *Martin*, holding that the requested modification of allowing a companion to accompany the plaintiff on a ski bike was not necessary to improve her skills because there were alternative strategies available to help her learn); *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1344 (S.D. Fla. 2003) (finding that plaintiff's Title III claim failed because he could not establish that "it was necessary for Plaintiffs to carry on, rather than check in, the Bi-Pap [which is a breathing machine used while sleeping] in order to fully participate in the cruise"); *Dryer v. Flower Hosp.*, 383 F. Supp. 2d 934 (N.D. Ohio 2005) (holding that plaintiff's requested modification of the hospital's policy prohibiting visitors from using its oxygen ports was not "necessary" under *Martin* because she was allowed to bring her own oxygen tank into the hospital).

**Exhibit 41**

impairments regardless of whether their hearing loss is 20 percent or 100 percent. The same is true with DAS, which offers the opportunity to completely avoid waiting in line throughout the day to *all* persons with autism or other cognitive disabilities. It does not matter how severe or mild the autism is because a DAS holder has the right to not wait in *any* traditional queue, which all other guests must do on every ride.

The fact that this right is also provided to guests with mild forms of ▮▮▮ does not mean that a different accommodation is required for persons with more severe impairments. Like the wheelchair ramp or the video captioning device, one solution has been found in DAS that completely eliminates waiting at an attraction for *all* guests with ▮▮▮ regardless of how severe or mild their disability is. When the opportunity for access offered by an accommodation is *complete*, there is no need to differentiate between persons with different degrees of impairment.

In short, DAS reasonably accommodates guests with disabilities who are not able to wait in a conventional queue environment and provides the level of accommodation required by law. Because Complainant admits that she received DAS for her daughter, there is no reasonable cause to believe that any discrimination occurred, and the charges filed by Complainant should be dismissed.

As addressed in my cover letter, we have agreed to bring individual Disney Cast Members to specifically address the allegations in this complaint and to answer any questions you may have. Among other topics, they will walk you through the development and implementation of the DAS system and address the abuse and fraud issues involved with the prior GAC program.[4] In describing the DAS system, they will also explain how during the "virtual wait", a guest can visit other attractions with little or no wait times, obtain FastPasses or otherwise enjoy the parks. Based on their experience with DAS during the past 17 months, they will discuss how the program is working well, is being used frequently and is a popular service for guests with autism and other cognitive disabilities.

4. **Provide sworn statements or affidavits from the officials who were responsible for the actions taken which led to this complaint, explaining why they deemed the action necessary. Send sworn statements from other individuals who can verify the facts in support of your position.**

A letter issued by Disney about the changes to its prior program for providing access to attractions for guests with disabilities is provided as Exhibit 4.

---

[4] Under these circumstances, Complainant's requested modification would also constitute a fundamental alteration of Disney's business, which is a complete defense to her claim. *See* 42 U.S.C. § 12182(2)(A)(ii).

4

**Exhibit 41**

5.  Send copies of appropriate sections of written rules, policies and procedures or portions of policy manuals or employee handbooks which relate to the issues raised in the complaint. Provide an explanation for any unwritten policies or established practices which apply to the issue.

    Disney's *Guide for Guests with Disabilities* and *Guide for Guests with Cognitive Disabilities*, which describes the various services and accessible features at WDW, are provided as Exhibits 1 and 2. A fact sheet regarding Disney's DAS card is provided as Exhibit 5.

**Exhibit 41**