**McDERMOTT WILL & EMERY LLP**
Jason D. Strabo (SBN 246426)
jstrabo@mwe.com
2049 Century Park East, 38th Floor
Los Angeles, CA 90067-3218
Telephone:  +1 310 788 4125
Facsimile:   +1 310 277 4730

Kerry Alan Scanlon (admitted *pro hac vice*)
kscanlon@mwe.com
Jeremy M. White (admitted *pro hac vice*)
jmwhite@mwe.com
Julie H. McConnell (admitted *pro hac vice*)
jmcconnell@mwe.com
The McDermott Building
500 North Capitol Street, NW
Washington, D.C. 20001
Telephone:  +1 202 756 8000
Facsimile:   +1 202 785 8087

Attorneys for Defendant Walt Disney Parks and Resorts U.S., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.P., by and through S.P., as next friend, parent, and natural guardian; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC.,<br><br>Defendant. | CASE 2:15-cv-05346-CJC-E<br><br>**DISNEY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY AND STRIKE THE REPORT AND OPINIONS OF DR. LILA KIMEL IN BELLWETHER V**<br><br>Date: May 3, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Cormac J. Carney<br>Courtroom:  9B |

**PRELIMINARY STATEMENT**

Plaintiffs do not dispute the substance of Disney's *Daubert* motion or the defects in Dr. Kimel's report and deposition testimony, including that she plagiarized her report, falsely denied doing so under oath, committed ethical violations in her research, relied on erroneous facts, failed to read articles she cited, and is not an expert in the specific areas relevant to this case. Instead, they claim those flaws may warrant impeaching her opinions but not excluding them. But they ignore a multitude of cases where courts have excluded expert witness testimony for far *less*. They have not cited, and we are not aware of, any court decision denying a *Daubert* motion involving facts remotely like the ones here.[1] Given that Dr. Kimel is not qualified to serve as an expert in this case and that her opinions are both unreliable and unhelpful to the trier of fact, Disney's motion should be granted.

**I.    DR. KIMEL IS ADMITTEDLY UNQUALIFIED**

Plaintiffs admit that Dr. Kimel "does not consider herself an expert" in the areas of "delayed gratification" and "understanding time," but contend that she should nonetheless be permitted to testify as an expert in this case because those areas have been relevant to individual patients Dr. Kimel has treated in her private practice. Doc. 498, Pls.' Opp. at 5. Brain cancer may be relevant to individual patients who are treated by an oncologist, but that does not make the oncologist an expert in the surgical procedure of removing a brain tumor. A qualified expert like Dr. Kelderman would not need to type "autism and deferred gratification" into a basic Google search bar to search for background on that topic, as Dr. Kimel did.

Recognizing that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," *Daubert v. Merrell Dow*

---

[1] In a tacit concession that Dr. Kimel's report is grossly deficient, they have tried to rehabilitate her by attaching a 10-page declaration—an untimely, backdoor attempt to supplement her report—which Disney has moved to strike. *See* Doc. 503.

*Pharms.*, 509 U.S. 579, 595 (1993) (internal quotations omited), this Circuit has emphasized that federal judges should exclude such evidence "unless they are *convinced* that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1321, n.17 (9th Cir. 1995) (emphasis added). Disney respectfully suggests it would be difficult for this Court to be convinced of that, particularly in light of Dr. Kimel's deposition testimony. While plaintiffs claim that Dr. Kimel "[brought] herself up to date on current research" in preparing her report (Pls.' Opp. at 5), they ignore her admission that she did not even read some of the studies she relied upon in her report. Doc. 489-1, Def. Mem. Mot. at 10-11. Dr. Kimel's lack of specialized knowledge relevant to this case was exacerbated by what she repeatedly characterized as "not hav[ing] a lot of time truthfully to prepare." *Id*. at 11-12.

Plaintiffs also claim that Disney "does not question Dr. Kimel's education and background," Pls.' Opp. at 6, but that is not true. First, as explained in the instant motion (Doc. 489-1 at 2-4), she lacks the specialized education and background necessary to assist the trier of fact in understanding the issues in this case. Second, she admitted that she likely plagiarized her doctoral thesis in 2008 which is a requirement for a doctorate degree in the general area of clinical psychology. Doc. 489-5, Kimel Dep. at 71:7-10. Without that degree, she would not be a licensed clinical psychologist.

The misrepresentations about Dr. Kimel's background and credentials have continued. In plaintiffs' opposition to this motion, they describe Dr. Kimel as a "board-certified Neuropsychologist" with a "Subspecial[ty] in Pediatric Neuropsychology." Pls.' Opp. at 2, 4. While those are precisely Dr. Kelderman's credentials, Dr. Kimel is not board-certified in anything, she is not a neuropsychologist, and she has no pediatric subspecialty. *See* Doc. 489-4, Kimel Rep. at 1 ("I am a clinical psychologist."); Doc. 489-5, Kimel Dep. 80:8-9; Ex. 1, White Decl. ¶ 3 (indicating that Dr. Kimel is not listed in the American Board of

1  Professional Psychology's directory of board certified psychologists). This is a
2  troubling misrepresentation given the significance of being board-certified in a
3  specialized field.

4  **II.  DR. KIMEL'S OPINIONS ARE NOT RELIABLE**

5  As addressed in Disney's motion, Dr. Kimel engaged in repeated plagiarism,
6  relied on the results of an "informal survey" she conducted in a Denver Facebook
7  group,[2] failed to consider or misstated important facts elicited in discovery, and
8  admitted in her deposition that she could not "speak to" one of the two families
9  whose DAS experience she nonetheless opined about in her report. In response,
10 plaintiffs assert without explanation that Dr. Kimel's opinions are "reliable and are
11 based on quality research that cannot be question [sic]." Opp. at 6. They admit that
12 Dr. Kimel "should have done a better job" in her report but describe her plagiarism
13 as just "poor citation."

14 This attempt to minimize the flaws in what Dr. Kimel did in this case is an
15 effort to cover up the real harm that allowing her to testify would produce: Because
16 many of the opinions she espouses are lifted verbatim from studies written by
17 others, the trier of fact will not know whom they are being asked to rely on and the
18 real author cannot be cross examined. This is exactly the risk of "misleading the
19 jury" which the Ninth Circuit spoke about in *Daubert* and it warrants Dr. Kimel's
20 exclusion from this case.

21 Plaintiffs argue that the Court should not exclude expert opinions that are
22 merely impeachable because that goes to weight, not admissibility, but the cases

---

[2] Plaintiffs claim that "Dr. Kimel did not rely on the survey to formulate her conclusions." Opp. at 8. Both Dr. Kimel's report and her testimony indicate otherwise. *See* Doc. 489-4, Kimel Rep. at 25 ("I relied on Parent Facebook groups to get clarification on these programs . . . ."); *id*. at 32 ("These Facebook posts show that the DAS pass in and of itself is not sufficient to ensure a great experience for a family of a child with ASD that has more severe autism symptoms . . . ."); Doc. 489-5, Kimel Dep. at 138:5-11, 265:21-266:14 (testifying that she "needed" to rely on these anonymous Facebook comments to understand the differences between DAS and Disney's prior disability access program).

they cite are inapposite.  For example, in *Alaska Rent-A-Car v. Avis Budget Group*, the defendant did not challenge the opposing expert witness's general methodology, and only took issue with certain details of the expert's analysis (such as which market he used in his damages calculation).  738 F.3d 960, 970 (9th Cir. 2013).[3] Plaintiffs also cite a 14-year-old case from the Northern District of Texas to support their argument that plagiarism in an expert report does not warrant exclusion of that expert.  Opp. at 8.  But in that decision—which does not reveal the extent of the "alleged" plagiarism or whether the expert admitted to it—the court explicitly based its decision on the fact that the defendant "has not shown that [the alleged plagiarism] impacts the reliability of [the expert's] opinions."  *GWTP Invests., L.P. v. SES Americom, Inc.*, 2007 WL 7630459, at *5 (N.D. Tex. 2007).

Here, Dr. Kimel's plagiarism significantly impacts the reliability of her opinions, especially given that she adamantly denied under oath committing any plagiarism until confronted with specific examples.  Mot. at 5-7.  She is not an expert in the areas in which the trier of fact will have to render judgment, she portrayed the work of others as her own, and she failed—claiming she had insufficient time—to learn even the most basic facts about these two cases.[4] Because Dr. Kimel's opinions do not "rest[] on a reliable foundation," they should be excluded in their entirety.  *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 (internal quotations omitted).

---

[3] Remarkably, plaintiffs suggest that Dr. Kimel's opinions should not be excluded because they "do not result in prejudice" to Disney.  Opp. at 7.  It is self-evident that proffering expert opinions based on incorrect and incomplete facts, plagiarized source material, unethical research methods, and the presentation of opposing counsel's views as her own would severely prejudice Disney, particularly given the imprimatur of authority attributed to an expert witnesses at trial or on appeal.

[4] Dr. Kimel testified that the four-hour visit at issue in E.W.V. was a three-day visit, which suggests that her opinion could not possibly bear any relationship to what actually happened during that visit.

## III. DR. KIMEL'S OPINIONS ARE NOT RELEVANT

Disney comprehensively set forth in its motion the litany of relevant facts that Dr. Kimel did not review, as well as the specific facts she purportedly relied on but were inaccurate. Mot. at 16-19. Plaintiffs do not address, let alone rebut, these omissions and misstatements. Instead, they ask the Court to trust them when they represent that "Dr. Kimel conducted a thorough review of relevant facts which she cited in detail in her report." Opp. at 9. But her deposition testimony clearly shows she did not conduct "a thorough review of the relevant facts," and it is equally clear that the relevant facts in these two cases were not "cited in detail" in Dr. Kimel's report.

What *is* cited in Dr. Kimel's report about the two park visits in these cases are some of the plaintiffs' *allegations*, principally from the interviews she conducted with the mothers of the disabled plaintiffs, A.M.P. and L.A. But Dr. Kimel never read the deposition transcripts in sufficient detail (if she read them at all) to see if those allegations stood up to cross examination, which they did not. The "facts" Dr. Kimel "cited in detail" about T.J.A.'s DAS experience start at page 43 of her report. *See* Doc. 489-4, Kimel Rep. at 43. For example, she refers to L.A.'s interrogatory answer which stated that prior to their visit to Walt Disney World, L.A. looked at the website and called Disney to inquire about the change in the priority access program. What Dr. Kimel neglected to include in her report is that L.A. admitted in her deposition that this sworn interrogatory answer was "false" and that she never contacted the company prior to their visit. Ex. 1-A, L.A. Dep. (2/3/21) at 118:10-119:25, 121:21-122:9. Everything else in this description of the "facts" was taken either from Dr. Kimel's interview with L.A. or from L.A.'s interrogatory answers, and there is no mention of anything from the 385-page transcript of L.A.'s deposition, which elicited the actual facts about T.J.A.'s visit to WDW under DAS, as set forth in Disney's Statement of Uncontroverted Facts (Doc. 486-2).

The same is true with the section of Dr. Kimel's report, starting at page 46, that discusses the "facts" about E.W.V.'s 2014 visit to Disneyland. *See* Doc. 489-4, Kimel Rep. at 46. All of the information in this section appears to come from Dr. Kimel's interview with E.W.V.'s mother, A.M.P., even though it conflicts with the testimony elicited in A.M.P.'s 287-page deposition. For example, Dr. Kimel's description completely omits the fact that E.W.V. and his mother went on the Peter Pan and Dumbo rides and used DAS to do so. Dr. Kimel is apparently oblivious to the completely different version of the facts revealed in A.M.P.'s deposition, and this is fatal to the reliability of her opinions in a case that depends heavily on what transpired in Disney's theme parks under DAS.[5]

## CONCLUSION

For the reasons set forth above and in Disney's instant motion, the Court should enter an order excluding the testimony, opinions and report of Dr. Lila Kimel.

Dated: April 19, 2021

McDERMOTT WILL & EMERY LLP

By: /s/ Kerry Alan Scanlon
Kerry Alan Scanlon

Attorney for Walt Disney Parks and Resorts U.S., Inc.

---

[5] Courts routinely exclude expert testimony under these circumstances as irrelevant because it does not shed meaningful light on the issues for decision. *See Daubert*, 509 U.S. at 591.

# CERTIFICATE OF SERVICE

I certify that on April 19, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Jeremy M. White
Jeremy M. White