

FILED
CLERK, U.S. DISTRICT COURT

4/20/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_CW\_\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.P., *ET AL.*, | Case No.: CV 15-05346-CJC (Ex) |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFFS T.J.A. AND L.A.** [Dkt. 486] |
| WALT DISNEY PARKS AND RESORTS U.S., INC., | |
| Defendant. | |

## I. INTRODUCTION

In this case, Plaintiffs, who are individuals with cognitive disabilities and their guardians, allege that Defendant Walt Disney Parks and Resorts U.S., Inc.'s ("Disney") Disabled Access Service program fails to sufficiently accommodate their disabilities. (*See generally* Dkt. 1-1–1-10 [Complaint, hereinafter "Compl."].) Now before the Court

is Disney's motion for summary judgment on the claims of Plaintiffs T.J.A. and his mother, L.A. (together, "Plaintiffs").  (Dkt. 486.)  For the following reasons, Disney's motion is **GRANTED**.[1]

## II.  BACKGROUND

For many years before 2013, Disney accommodated disabled guests through a program called the Guest Assistance Card system ("GAC").  (*See* Dkt. 434-10 [Deposition of Alison Armor, hereinafter "Armor Dep."] at 15–16.)  GAC generally provided disabled guests and their families with unlimited on-demand access to rides and attractions with little or no wait.  (Dkt. 434-16 [Declaration of Bruce Laval, hereinafter "Laval Decl."] ¶ 17.)

In October 2013, Disney implemented a new program called Disabled Access Service ("DAS") to replace GAC.  DAS is slightly more restrictive than GAC, but still allows guests with autism and other cognitive disabilities to virtually hold a place in line for rides without standing in the actual line.  (Dkt. 438-52 ["Disneyland Guide"] at 32.)  Similar to FastPass, a service available to all guests, DAS assigns users a return time which is scheduled based on a ride's posted wait time minus ten minutes.  (Laval Decl. ¶ 19.)  While DAS users wait virtually for their return time, they can visit other attractions rather than stand in a physical line.  Once the return time arrives, the DAS user waits in the FastPass line, which is typically less than 15 minutes.  (*See id*. ¶ 29.)  Where wait times are less than 15 minutes, DAS users are ordinarily given nearly immediate access to the ride or attraction.  (*Id*. ¶ 20; Dkt. 438-44 [Declaration of Jennifer Sweetman, hereinafter "Sweetman Decl."] ¶ 4.)  Sometimes DAS users are also given re-admission

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for May 3, 2021, at 1:30 p.m. is hereby vacated and off calendar.

passes, which allow them to immediately enter the shorter FastPass line at any attraction at any time without having to wait virtually. (Laval Decl. ¶ 21.) Unlike FastPass tickets, which are issued only until the daily capacity for the attraction is reached, DAS entitlements never run out for the day and can always be requested. (*Id.* ¶ 19.)[2]

T.J.A. is a 22-year-old man with autism, which makes it difficult for him to stand in line for long periods of time. (Compl. ¶¶ 1046–47, 1052.) Specifically, Plaintiffs allege that T.J.A. is incapable of deferring gratification and that he is a "repeat rider" who must visit a particular attraction over and over for several hours. (*Id.* ¶¶ 1051–54.) T.J.A. has visited Walt Disney World ("Disney World") once since Disney implemented DAS. (*See* Dkt. 488-37 [Plaintiffs' Answers to Interrogatories] at 9–10.)

In 2015, T.J.A. and his mother, L.A., filed claims against Disney along with 26 other Plaintiff families.[3] T.J.A. brought a claim for violation of California's Unruh Civil Rights Act ("Unruh Act"), L.A. brought a claim for breach of contract, and they both brought claims for negligent and intentional infliction of emotional distress. (Compl. ¶¶ 1045–1105.) Plaintiffs allege that Disney deprived T.J.A. of the full and equal enjoyment of Disney's parks. (*Id.* ¶¶ 8, 1088.) They request a modification to DAS that would "relieve him of unpredictable wait times that exceed about 15 minutes per attraction." (Dkt. 493 [Plaintiffs' Opposition, hereinafter "Opp."] at 13.)

//
//

---

[2] Tests conducted by Disney show that DAS users can experience over 50% more attractions than non-DAS users, and DAS users spend less than half as much time waiting in line. (Laval Decl. ¶¶ 36–40.)

[3] Of the 27 original Plaintiff families, fewer than ten have active claims. This case was initially before Judge Manuel Real, but it was transferred to this Court after he passed away in 2019. Judge Real granted multiple summary judgments for Disney on similar claims brought by other Plaintiffs. (Dkts. 224, 225, 355.)

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325.

As in this case, when the nonmovant would have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. If the movant meets this burden, the nonmoving party must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The court does not make credibility determinations or weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**IV. DISCUSSION**

Disney seeks summary judgment on T.J.A.'s Unruh Act claim, L.A.'s breach of contract claim, and both of their claims for negligent and intentional infliction of emotional distress. Summary judgment is granted on each claim.

**A. T.J.A.'s Unruh Act Claim**

T.J.A.'s Unruh Act claim fails because the Unruh Act is "expressly limited to discrimination that takes place within California's borders." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015); Cal. Civ. Code § 51 (providing that "all persons within the jurisdiction of [California] . . . are entitled to the full and equal accommodations . . ."). Here, the discrimination alleged by T.J.A. occurred entirely at Disney World in Florida and none of it occurred in California. (Plaintiffs' Answer to Interrogatories at 9–10.) Moreover, T.J.A. and L.A. are both residents of Bergen County, New Jersey. (Compl. ¶ 1050.) Because the Unruh Act "do[es] not apply to claims of nonresidents of California injured by conduct occurring beyond California's border," T.J.A.'s Unruh Act claim fails as a matter of law. *Loving v. Princess Cruise Lines, Ltd.*, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009).

//

### B. L.A.'s Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must establish that: "(1) the parties entered into a contract; (2) Defendant failed to do something the contract required it to do; and (3) plaintiffs suffered damages as a result of Defendant's breach." *Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, 425 F.Supp.3d 1234, 1244 (C.D. Cal. 2019) (citing *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014)).[4] L.A.'s claim fails because she has failed to show that Disney breached any contract. Plaintiffs have not identified a single contractual term that has been violated, and Disney never promised that all guests would receive their preferred experience or even a satisfying experience. (*See* Compl. ¶¶ 1102–05; Dkt. 355 [Order Granting Motions for Summary Judgment] at 6.) Indeed, L.A. testified that she did not have a contract with Disney related to the visit at issue. (Dkt. 488-35 [Deposition of L.A., hereinafter "L.A. Dep."] at 379–80.) L.A. therefore cannot prevail on her breach of contract claim.

### C. Plaintiffs' Negligent Infliction of Emotional Distress Claims

"A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010). To recover damages for negligent infliction of emotional distress, a plaintiff must allege either an

---

[4] In diversity cases such as this, the Court must determine which State's substantive law applies based on California's choice-of-law rules. *Softbank Content Servs. Inc. v. MPO Canada Inc.*, 225 F. App'x 687, 689 (9th Cir. 2007). California applies the governmental interest test which first asks whether the foreign law differs from California law. *Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005). If so, the Court considers each state's interest in having its own law applied to this case to determine whether there is a "true conflict" between their interests. *Id.* Finally, if each state has a legitimate interest, the Court compares the extent to which each state's interests will be impaired if the other state's law is applied. *Id.* Because there is no conflict between Florida law and California law for breach of contract, the Court applies California law. *See JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508 (Fla. Dist. Ct. App. 2020).

"accompanying personal, physical injury" or "serious emotional distress." *Id.* Serious emotional distress "may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.*[5]

Plaintiffs have failed to raise a genuine issue of material fact on their claims for negligent infliction of emotional distress. They have presented no evidence that Disney either breached its duty of care to Plaintiffs or caused Plaintiffs to suffer physical injury or serious emotional distress. (*See* Opp. at 23–25.) Plaintiffs vaguely assert that "factual issues exist that must be reconciled at trial," but they neither provide any support for this assertion nor state what factual issues would have to be resolved. (*Id.* at 23.) Accordingly, their claims for negligent infliction of emotional distress fail as a matter of law.

### D.   Plaintiffs' Intentional Infliction of Emotional Distress Claims

The elements of the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . ." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).[6] For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."

---

[5] A conflict exists between California and Florida law on this issue because California law does not require a physical injury while Florida law does. *See Kendron v. SCI Funeral Servs. of Fla., LLC*, 230 So. 3d 636, 637 (Fla. Dist. Ct. App. 2017). However, because Plaintiffs' claims fail under either standard, the Court need not determine which State's law applies.

[6] The Court applies California law because there is no conflict with Florida law. *Brown v. Brown*, 800 So. 2d 359, 363 (Fla. Dist. Ct. App. 2001).

1  *Id.*; *see also Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1608 (2009) ("[T]he conduct alleged must be so extreme and outrageous as to go beyond all possible [bounds] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")

Plaintiffs' claims fail because they do not provide any evidence that Disney's decision to change from the GAC program to the DAS program was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*See* L.A. Dep. at 380); *Christensen*, 54 Cal. 3d at 903.  To the contrary, Disney's DAS system allows users to experience over 50% more attractions than non-DAS users and spend less than half as much time waiting in line.  (Laval Decl. ¶¶ 36–40.)  And L.A. admitted that she did not have any information showing that Disney "deliberately designed DAS to hurt people with autism." (L.A. Dep. at 380.)  Finally, Plaintiffs have not presented any evidence that they suffered severe or extreme emotional distress as a result of the DAS system.

//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Disney's motion for summary judgment on T.J.A.'s and L.A.'s claims is **GRANTED**.[7]

DATED: April 20, 2021

_____
HON. CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[7] Disney moves to strike L.A.'s opposition to its motion for summary judgment, arguing that Plaintiffs may submit only one opposition. (Dkt. 500.) Because the Court considered L.A.'s opposition and still finds that summary judgment is warranted, Disney's application to strike L.A.'s opposition is **DENIED**. Disney also moves to exclude the opinions and strike the declaration of Plaintiffs' expert, Dr. Lila Kimel. (Dkts. 489, 503.) However, because Plaintiffs do not rely on Dr. Kimel's opinions or declaration in their oppositions to summary judgment, the Court need not consider whether Dr. Kimel's opinions should be excluded or whether her declaration should be stricken. Finally, Disney moves to strike several portions of L.A.'s April 2021 declaration on the ground that her statements flatly contradict her earlier deposition testimony. (Dkt. 505.) Because the Court concludes that summary judgment is warranted even considering L.A.'s declaration, the Court need not determine whether L.A.'s declaration should be stricken.